**In re Thomas G. KELLY, Pauline A. Kelly, Debtors.**

**Bankruptcy No. 85–00783.**

United States Bankruptcy Court, D. Arizona.

Jan. 23, 1986.

Dennis M. Breen, III, Tucson, Ariz., for debtors.

Alan Solot, Tucson, Ariz., Trustee.

Michael McGrath, Tucson, Ariz., for Zolg.

Gerald Hirsch, Tucson, Ariz., for Tucson Realty and Trust Co.

## ORDER

WILLIAM A. SCANLAND, Bankruptcy Judge.

This Order shall constitute the Court's findings of fact and conclusions of law.

This matter is before the Court on its own Order to Show Cause why the Debtors' chapter 7 proceedings should not be dismissed pursuant to 11 U.S.C. § 707(b) as a substantial abuse of the provisions of that chapter. The Debtors were represented at the hearing by Dennis Breen. Creditor Tucson Realty and Trust Company appeared by Gerald Hirsch, and creditor Robert Zolg appeared by Michael McGrath.

Prior to filing their chapter 7 on December 16, 1984, the Debtors were involved as plaintiffs in a protracted state court litigation based upon an alleged fraud in connection with the Debtors' purchase of their current residence. The Debtors were unsuccessful at the trial level and pursued their action by appeal to both the Arizona Court of Appeals and the Arizona Supreme Court. Said appeals were likewise to no avail and the upshot of the litigation was a judgment against the Debtors for the attorneys' fees expended by the prevailing defendants in the case aggregating $25,000.00.

The Debtors now seek to have that $25,000.00 judgment discharged in their chap-

ter 7 proceedings. It is significant that the Debtors list no other unsecured debts on their schedules. In fact, the only other debts listed by the Debtors on their schedules are three consensual liens aggregating $147,000.00 against the Debtors' residence. Schedule B–1 states the market value of the residence is $175,000.00. The Debtors claim a $50,000.00 homestead exemption.

Debtor Thomas Kelly, an attorney, reported a salary of $51,150.00 in 1983, and $49,200.00 in 1984. He reports a current gross income of $5,100.00 per month, and take-home pay of $3,719.84 per month. Mrs. Kelly reports no income. The schedules show assets of $182,000.00.

In reviewing the Debtors' file this Court was immediately struck by the fact that the Debtors listed an excess of $441.84 in monthly income over monthly expenses. The Debtors list certain monthly expenses which the Court deems excessive, exemplary of which is $500.00 for monthly recreational expense.

The Order to Show Cause issued pursuant to 11 U.S.C. § 707(b) and a hearing was held thereon. The Debtors were present but no testimony was taken. Debtors' counsel presented oral argument to the Court basically reiterating the arguments set forth in his written response to the Order to Show Cause. Additionally, the Court reviewed the transcript of the Rule 2004 examination of Debtor Thomas Kelly taken postpetition by the attorneys for the judgment creditors.

11 U.S.C. § 707(b) was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98–353, 98 Stat. 333, and is applicable to the case at bar. Section 707(b) provides:

"(b) After notice and hearing the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall

be a presumption in favor of granting the relief requested by the debtor."

A fair reading of section 707(b) leads to the conclusion that two basic inquiries are germane to a determination by the Court under that section. First, is the debtor one whose debts are primarily consumer debts? Second, would the granting of relief to that debtor be a substantial abuse of the provisions of chapter 7? The second sentence of section 707(b) clearly indicates that any doubts should be resolved in the debtor's favor consistent with the spirit of title 11 and the concept of "fresh start."

It should be noted at the outset that very little guidance is available to the Court in the way of precedent. This Court is aware of several reported decisions involving section 707(b). The Bankruptcy Code nowhere defines the term "substantial abuse" nor does it define what constitutes "primarily consumer debts."

Debtors' counsel has strenuously argued that the obligations of the Debtors are not primarily consumer debts and that section 707(b) is thus not applicable to this chapter proceeding.

The term "consumer debt" is a technical term defined in the Code to mean "a debt incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. § 101(7).

The Debtors only list two classes of debt. The first is the judgment representing attorneys' fees incurred by the prevailing defendants in the Debtors' state court litigation. While the subject matter of the Debtors' litigation related directly to the purchase of their residence the litigation itself and the attorneys' fees incurred therein by the prevailing parties arose only incidentally thereto. Whether the judgment for fees constitutes a consumer or non-consumer obligation need not be decided here since that judgment represents only 14.5 per cent of the Debtors' total obligations, the remainder of which have been found to be consumer in nature. Thus, the characterization of the judgment as a non-consumer obligation would not

alter the finding that the obligations of the Debtors are "primarily" consumer debts.

The second class of debt listed by the Debtors is represented by the three consensual liens against the Debtors' residence totaling $147,000.00. The Debtors do not argue that the moneys borrowed against the residence do not represent debts incurred primarily for personal, family or household purposes. Rather, the Debtors assert that the aggregate debt of $147,-000.00 cannot be utilized in the calculation of consumer debt because that debt is secured by real property. To support their position the Debtors cite the Court to the legislative history under section 101(7) which states that "a consumer debt does not include a debt to any extent the debt is secured by real property." 124 Cong.Rec. p. H. 11090 (Sep. 28, 1978); Bankruptcy Service—L.Ed, Legislative History § 81:3.

It is significant that the legislative history cited by the Debtors relates to the passage of the Bankruptcy Relief Act of 1978, Pub.L. No. 95–598. In contrast, section 707(b) was added by the BAFJA of 1984 in an attempt to curb what was widely perceived as a misuse of the bankruptcy proceeding by persons not suffering economic hardship. 130 Cong.Rec. 7497 (daily ed June 29, 1984).

█ Only one reported case to date has analyzed the term "primarily consumer debts" as used in section 707(b) in the context of whether or not a mortgage debt should be included therein. The bankruptcy court in *In re Mitchell W. Bryant*, 12 B.C.D. 565 (Bkrtcy.W.D.N.C.1984) found that mortgage debts should be included as consumer debts for purposes of section 707(b), given the lack of a more specific statutory standard. The court in *Bryant* found that because the debtor's consumer obligations (including the mortgage debt) totaled $46,844.97 and his non-consumer obligations (personally guaranteed business debts) totaled $40,248.00, the subject debtor was one whose debts were primarily consumer debts under section 707(b). This Court agrees with the finding that a mortgage debt should be considered a consumer

debt for purposes of section 707(b) in light of its legislative history and the abuses sought to be remedied thereby. Applying that finding to the instant case, the Debtors' aggregate consumer debt is $147,-000.00 as compared with their non-consumer obligations totaling $25,000.00. Under these circumstances it can hardly be denied that the Debtors' obligations are primarily consumer debts.

█ The next issue is whether the granting of chapter 7 relief to these Debtors would be a substantial abuse of the provisions of chapter 7. 11 U.S.C. § 707(b). Since the Code provides no guidance as to what is meant by the "substantial abuse" provision under section 707(b), the Court is constrained to examine the congressional intent behind that section.

The legislative history under section 707(b) indicates that the Court must determine a chapter 7 debtor's ability to fund a chapter 13 plan, and so must examine the future income potential of that debtor. "On the issue of substantial abuse of the provisions of chapter 7, the bankruptcy judge should make a determination of whether the debtor could reasonably fund a chapter 13 plan without undue hardship." *In re Grant*, CCH B.L.D. ¶ 70,656 (Bkrtcy. N.D.Ohio 1985) at p. 87,415. The court in *Grant* cited the remarks of Congressman Anderson which this Court agrees are indicative of the legislative intent behind the substantial abuse provision. Those remarks were, in relevant part, as follows:

> "Furthermore, the bankruptcy court could dismiss a chapter 7 filing if in its opinion the filing constitutes a 'substantial abuse' of the Bankruptcy Code because the debtor is found capable of fulfilling the terms of a chapter 13 repayment agreement." 130 Cong Rec. H 7499 (daily ed June 29, 1984).

The Debtors in this case seek to dismiss only the $25,000.00 judgment debt. This was made clear in the Rule 2004 examination conducted postpetition by the judgment creditors.

The Debtors' Schedule of Current Income and Expenses lists a monthly excess of $441.84 in income over expenses. This amount paid monthly into a 36-month plan would yield $15,906.24 or approximately 64 per cent to the unsecured judgment creditors toward the principal on their debt. The Court notes that the Debtors' expenses appear excessive in some areas, especially in the area of recreation in which the Debtors list an expense of $500.00 per month. This Court is of the opinion that the $500.00 per month for recreational expenses is exceedingly excessive for debtors seeking relief in a chapter 7 proceeding.

A reduction of the recreational expense figure to a more reasonable level of $250.00 would yield an additional $250.00 per month available to fund the chapter 13 plan. The additional $250.00 per month taken together with the original available amount of $441.84 per month would yield $691.84 available to fund a chapter 13 plan on a monthly basis. In the course of a 36-month plan the Debtors are capable of paying $24,906.24, or approximately 99 per cent of their unsecured debt. The reduction of the Debtors' recreational expenses by 50 per cent would not create an undue hardship on the Debtors.

It is clear that these Debtors have not suffered any unforeseen calamity such as unemployment or serious illness which have rendered them unable to pay their creditors or entitle them to seek a fresh start under the provisions of chapter 7. The Debtors have simply incurred a judgment for attorneys' fees in a lawsuit prosecuted by them without success, and it is clearly the intent of the Debtors to now discharge only this debt in their chapter 7 proceeding.

To reiterate, the Debtor, Thomas G. Kelly, earns approximately $60,000.00 per year in his legal practice, and there is no evidence that this income will substantially decline in the future. The Debtors are clearly capable of funding a chapter 13 plan without undue hardship, and to grant them a discharge in these proceedings under these circumstances would constitute a substantial abuse of the provisions of chapter 7 of the Bankruptcy Code.

Therefore, the joint petition of Thomas G. Kelly and Pauline A. Kelly is hereby dismissed pursuant to 11 U.S.C. § 707(b).