**In re Thomas G. KELLY and Pauline A. Kelly, Debtor(s).**

**Thomas G. KELLY and Pauline A. Kelly, husband and wife, Appellant(s),**

**v.**

**Alan SOLOT, Trustee in Bankruptcy, Zolog and Tucson Realty and Trust Company, Appellee(s).**

**BAP Nos. AZ 86–1080 EMeAS, AZ 86–1117 EMeAS.**
**Bankruptcy No. 85–00786–TUC.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted on June 20, 1986.
Decided Dec. 16, 1986.

Thomas G. Kelly, III, Blaser, Kelly & Don, P.C., Tucson, Ariz., for appellants.

Gerald Hirsch, Tucson, Ariz., for appellees.

Before ELLIOTT, MEYERS and ASHLAND, Bankruptcy Judges.

## OPINION

ELLIOTT, Bankruptcy Judge:

The debtors appeal from an order dismissing their bankruptcy case. The bankruptcy judge dismissed the Kellys' Chapter 7 case pursuant to 11 U.S.C. § 707(b) after determining that their debts were primarily consumer debts and that granting relief to them would be a substantial abuse of Chapter 7. *In re Kelly,* 57 B.R. 536 (Bankr.D.

Ariz.1986). The Kellys raise the following issues on appeal:

I. Whether 11 U.S.C. § 707(b) is void for vagueness under the Due Process Clause because there are no ascertainable standards established for its application.

II. Whether 11 U.S.C. § 707(b) violates Due Process by placing the Trial Judge in an adversarial position to the Appellants.

III. Whether the Judge erred in ruling that the Appellants' debts were primarily consumer debts.

IV. Whether the Trial Judge erred in considering the future income of Appellants as the basis for his finding of substantial abuse under 11 U.S.C. § 707(b).

V. Whether the Trial Judge erred in failing to follow the legislative intent underlying 11 U.S.C. § 707(b).

VI. Whether the Trial Judge erred in failing to apply the statutory presumption in favor of granting the relief requested by the Appellants.

Because we conclude that the bankruptcy judge erred in concluding that the Kellys' debts are primarily consumer debts we reverse and remand.

## PROCEDURE

Appellants' due process arguments are troublesome. The bankruptcy judge issued an order to show cause sua sponte reciting that the court had reviewed the debtors' schedules and determined that the debts of the debtors were primarily consumer debts and directing the debtor to show cause why the case should not be dismissed. Although the record shows that the judge considered all issues, the language of the order at least gives the appearance that the court made a crucial finding (that the debts were primarily consumer debts) before notice and hearing of the issue. And see *In re Keniston,* 60 B.R. 742, (Bankr.D.N.H. 1986) (Advising Attorney General of substantial constitutional issues including procedural due process because the judge is also cast as "prosecutor").

Because we reverse on other grounds we do not decide this issue but note it for

consideration by the bankruptcy judge on remand. The right to seek a discharge through Chapter 7 of the Bankruptcy Code is an important right and the courts should adopt procedures insuring that debtors are afforded procedural due process in adjudicating that right.

## BACKGROUND

The record before the panel and the bankruptcy judge is sparse, perhaps because of the relatively informal nature of the proceeding.

This record reveals that the Kellys have three debts totalling $147,000 secured by their residence and two unsecured disputed debts. The unsecured debts arose from a judgment awarding attorney's fees and costs against the Kellys in state court litigation.

After reviewing the Kellys' debt structure, the bankruptcy judge held that the debts secured by the Kellys' residence should be considered "mortgage debt" and that "mortgage debt" was consumer debt. *Kelly,* 57 B.R. at 539. Because $147,000 of the Kellys' total debt of $173,000 was secured by their residence, the bankruptcy judge found that it was unnecessary to decide if the two judgment debts were consumer debts in order to conclude that the Kellys had primarily consumer debts. *Kelly,* 57 B.R. at 538.

## DISCUSSION

Section 707(b), which was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, reads as follows:

After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

We focus on § 707(b)'s requirement that a debtor have "primarily consumer debts."

This appeal requires us to decide whether consumer debt, as defined by 11 U.S.C. § 101(7), includes debts secured by real property.

Issues of statutory interpretation present questions of law which we review *de novo. Sierra Switchboard Co. v. Westinghouse Electric Corp.,* 789 F.2d 705, 707 (9th Cir.1986).

The starting point for statutory interpretation is the language of the statute itself. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). That language is given its ordinary meaning and, absent clearly expressed legislative intent to the contrary, is conclusive. *Id.*

## DEBT SECURED BY REAL PROPERTY

The Kellys argue that the debts secured by their residence are not consumer debts. To support this argument, they rely on statements by Senator DeConcini and Congressman Edwards from the floor of Congress that "[a] consumer debt does not include a debt to any extent the debt is secured by real property." 124 Cong. Rec.S. 17,406 (daily ed. Oct. 6, 1978) (statement of Senator DeConcini); 124 Cong. Rec.H. 11,090 (daily ed. Sept. 28, 1978) (statement of Congressman Edwards).

Several courts have adopted the position that debts secured by real property are not consumer debts. *In re Ikeda,* 37 B.R. 193, 194–95 (Bankr.D.Hawaii 1984); *Brunswick Employees Credit Union v. Nenninger (In re Nenninger),* 32 B.R. 624, 626 (Bankr.W.D.Wis.1983); *Gibbs v. Randolph (In re Randolph),* 28 B.R. 811, 813 (Bankr. E.D.Va.1983); *In re Stein,* 18 B.R. 768, 769 (Bankr.S.D.Ohio 1982); *see also Bank of Columbia Falls v. Burgess (In re Burgess),* 22 B.R. 771, 772 (Bankr.M.D.Tenn. 1982) (appearing to adopt this view in dictum). Other courts have reached the opposite conclusion. *Kelly,* 57 B.R. at 539,; *In re Bryant,* 47 B.R. 21, 23, 26 (Bankr.W.D. N.C.1984).

The language of § 101(7) makes no reference of any kind to the secured or unsecured status of debt which may be classified as consumer debt. We recognize that

Senator DeConcini and Congressman Edwards played central roles in the passage of the Bankruptcy Reform Act of 1978 and also that their individual explanatory comments cannot be used to rewrite the plain language that Congress as a whole enacted in § 101(7).

However, the exclusion of debts secured by real property is logical and consistent with the purpose behind § 707(b). A debtor owning a family home usually has substantial debt secured by real property. The debt secured by the residence is usually three or four times (or greater) than the aggregate of unsecured debt. Therefore, unless that secured debt is disregarded, all such debtors could be denied relief because their indebtedness would be *primarily* consumer debt; certainly in dollar amount. In addition, it is common knowledge that the consumer loan industry proposed and lobbied heavily for the so-called consumer bankruptcy provisions,[1] including § 707(b) and that the consumer loan industry is not generally concerned with debt secured by real estate.

■ We conclude that the bankruptcy judge erred in considering the three loans secured by the debtor's residence as consumer debts for the purposes of § 707(b).

We turn to consideration of Kellys' two unsecured and disputed judgment debts.

## CLASSIFICATION OF CONSUMER DEBT

■ The term "consumer debt" is defined for purposes of the Bankruptcy Code as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(7). The word "primarily" means chiefly or principally. *The American Heritage Dictionary* 1039 (1976). The word "purpose" means goal, aim, or intention. *The American Heritage Dictionary* 1062 (1976). *A fortiori*, for a debt to be a consumer debt it must be incurred principally to achieve a personal, family, or household goal. *In re White*, 49 B.R. 869, 872 (Bankr.W.D.N.C.1985).

1. See comments of Congressman Anderson in the Conference Report on H.R. 5174, Congres-

There is no indication that Congress clearly intended a different meaning. The committee reports simply indicate that "[the] definition [of consumer debt] is adapted from the definition used in various consumer protection laws." H.Rep. No. 95–595, 95th Cong. 1st Sess. (1977); S.Rep. No. 95–989 2nd Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808.

The bankruptcy judge did not decide whether the unsecured judgment debts were consumer debts.

The arguments made on appeal and below indicate that the litigation from which the judgment for attorney's fees and costs issued was initiated by the Kellys' and concerned their residence, but the record is unclear. The fact that the litigation involved the family home may or may not be relevant as to the status of the judgment debts as consumer debts. *Cf. In re White*, 49 B.R. at 872 (liability for personal injuries caused while driving an automobile for personal purposes not a consumer debt); *accord In re Alvarez*, 57 B.R. 65, 66 (Bankr. S.D.Fla.1985).

Therefore, the case must be remanded for a determination of the nature of the unsecured debt.

## FUTURE INCOME

The bankruptcy judge placed considerable weight upon the debtor's perceived ability to pay the unsecured debt out of future income of the debtors under Chapter 13 of the Bankruptcy Code as bearing on the issue of substantial abuse under § 707(b). The judge relied in part on the remarks of Congressman Anderson in the Congressional Record. As pointed out in an article in the October 1986 issue of *Norton Bankruptcy Law Adviser* entitled "Using Legislative History to Interpret 1984 Amendments to Sections 548 and 707," by Block-Lieb, statements in the Congressional Record, sometimes inconsistent, are not a reliable source for interpretation of the statute. For example, the author states,

sional Record, Friday, June 29, 1984.

The amendment to § 707(b) contained in the Senate-passed version of HR 5174 was identical to the language passed by the House. As the Conference Report on HR 5174 was adopted by the Senate, Senator Metzenbaum noted that 'both the House and Senate have agreed to the total elimination of the future income language. Under HR 5174, the availability of bankruptcy relief would not be limited by a future earnings standard.' 130 Cong Rec S7624 (daily ed. June 19, 1984). Moreover, Chairman Rodino remarked during consideration in the House of the result of the conference on HR 5174 that 'the conferees did not alter the consumer credit amendments. These amendments are fair to both debtors and creditors, and contain no threshold or future income test.' 130 Cong Rec H7489 (daily ed. June 29, 1984).

Upon remand the bankruptcy judge should reconsider the application of a future income test in determining substantial abuse under § 707.

Reversed and remanded for further proceedings consistent with this opinion.