**In the Matter of Donald J. BOOTH and Carolyn B. Booth, Debtors.**

**Donald J. Booth and Carolyn B. Booth, Appellants.**

**No. 88–4427**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1988.

Robert Alan Byrd, Biloxi, Miss., for appellants.

Before CLARK, Chief Judge, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Appellants Donald J. Booth and Carolyn Booth appeal the dismissal of their Chapter 7 bankruptcy petition pursuant to 11 U.S.C. § 707(b).[1] Because we determine that appellants' debts were improperly classified, we reverse and remand.

---

1. 11 U.S.C. § 707(b) provides:

   After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

## I. BACKGROUND

Donald and Carolyn Booth, both physicians, reside in Ocean Springs, Mississippi. In addition to his medical practice, Dr. Donald Booth engaged in numerous other ventures. He owned a small office building and mini-warehouse operation, purchased the Marsh Point Marina, and was a partner in Blue Water Development Corporation, a condominium project. Although the condominium project was completed, it turned out to be a financial failure. Both appellants had executed a personal guaranty for their proportionate share of the obligation, which exceeded $133,000.

On March 7, 1986, the Booths filed their Joint Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code. The bankruptcy court, sua sponte, issued its Order to show cause why appellants' Chapter 7 proceeding should not be dismissed as constituting a "substantial abuse" pursuant to section 707(b). Following an evidentiary hearing, the bankruptcy court found that the debts were primarily consumer debts, that granting relief under Chapter 7 would constitute a substantial abuse of the provisions of that chapter, and that the Booths' schedule of income and expenditures was either not accurate or excessive and extravagant. The court then issued its Order dismissing the proceeding.

The Booths appealed to the district court, which affirmed the actions of the bankruptcy court. The district court's affirmation necessarily turned on two grounds. First, the court determined that the Booth proceeding did in fact constitute a substantial abuse of Chapter 7 of the Bankruptcy Code. In making that determination, the court adopted four factors to be examined in reaching a finding of "substantial abuse:"

1. The debtor's purpose in filing the petition;

2. The availability of Chapter 13, as opposed to Chapter 7, relief;

3. The existence of false or misleading statements or omissions concerning the debtor's financial condition; and

4. The submission of an excessive budget by the debtor solely for the purpose of maintaining an exorbitant lifestyle.[2]

After applying the above factors, the district court determined that the filing was indeed a "substantial abuse."[3]

The district court was more troubled by the bankruptcy court's characterization of the Booth's debts as "primarily consumer debts." However, the court, determining that "signature loans are unquestionably consumer loans regardless of the use to which the debtor applies the funds," ultimately upheld the Order of the bankruptcy court.[4]

## II. CLASSIFICATION OF ASSETS

■ A dismissal based on substantial abuse pursuant to section 707(b) must necessarily rest on a finding that the indebtedness consists primarily of consumer debts. The existence of consumer, rather than business-related, debts is a prerequisite to the application of this section. Therefore, it is necessary to classify the debts in question.[5] The debts reflected by the Booths' schedules are set out below.[6]

---

2. District Court, Memorandum Opinion at 7.

3. The District Court Memorandum Opinion states:

> [I]t seems obvious that the debtors filed their Chapter 7 petition simply to discharge their debts; neither debtor testified that they sought relief under the bankruptcy laws because of "illness, disability, unemployment, or some other calamity" .... Although the Court cannot find any misstatements or omissions in the debtors' petition, clearly their estimated budget is flagrantly excessive.

6. I.  Schedule A–1: Priority Claims

| Creditor | | Debt |
|---|---|---|
| IRS | 1985 taxes (subsequently determined to be $42,000) | |

District Court, Memorandum Opinion at 7–8.

4. District Court, Memorandum Opinion at 10.

5. The classification of debt as consumer or business necessarily involves an initial determination of a legal standard. Consequently, this Court may freely review the lower courts' conclusions. *In re Multiponics*, 622 F.2d 709 (5th Cir.1980).

Three of the Booths' debts are secured by a mortgage or deed of trust on their principal residence. Dr. Donald Booth testified that $75,000 of the $152,507.99 obligation was used to pay off a previous mortgage on the home. The remainder of the funds were invested in the marina business venture. The $11,000 debt was applied to the mini-warehouse complex, and the $133,480, secured by the third mortgage, was applied to professional marketing services for the condominium project.

As the district court correctly noted, there is a split of authority concerning the classification of debts secured by realty.[7] The legislative history accompanying section 707(b) indicates that debts secured by a home mortgage were not intended to be conclusively classified as consumer debt.[8] As noted in *In re Kelly*, 70 B.R. 109, 112 (B.A.P. 9th Cir.1986), the explanatory com-

ments of key legislators cannot be utilized to expand the plain language of the Congressional statement. "However, the exclusion of debts secured by real property is logical and consistent with the purpose behind section 707(b)." *Id.* There is an unavoidable potential that a consumer, having once secured a debt with their residence, will be thereafter unable to escape from the mire of "primarily consumer debt."

■ Furthermore, the term "consumer debt" is defined in section 101(7) to include "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(7). The legislative history of this section indicates that the definition is adapted from the definition used in various consumer protection laws.[9] Cases decided under the Truth in Lending Act indicate that when the credit transaction involves a profit motive, it is outside

| Creditor | Debt |
|---|---|
| State of Mississippi | 1985 taxes (subsequently estimated at $5,000) |
| Jackson Co. MS | 1984–85 ad valorem taxes—$1,600 |
| Ocean Springs, MS | 1984–85 ad valorem taxes—$1,600 |
| IRS | 1986 taxes (unknown) |
| State of Mississippi | 1986 taxes (unknown) |

II. Schedule A–2: Secured Claims

| Creditor | Security & Value | Debt |
|---|---|---|
| Metropolitan Nat'l Bank | Realty/$260,000 (first mtg.) | $152,507.99 |
| Magnolia Ventures, Inc. | Realty/$260,000 (second mtg.) | $11,000.00 |
| Southern Federal S & L Assn. | Realty/$260,000 (third mtg.) | $133,480.00 |
| Southern Federal S & L Assn. | Realty/$120,000 | $96,000.00 |
| Peoples Bank | Auto/$1,200 | $1,500.00 |
| Peoples Bank | Auto/$15,500 | $16,000.00 |
| Hancock Bank | Auto/$8,500 | $9,800.00 |

III. Schedule A–3: Unsecured Claims

| Creditor | Nature of Debt | Debt |
|---|---|---|
| L.A. Cyr | Personal loan | $60,000.00 |
| S.B.A. | Renewed loan | $2,700.00 |
| Singing River Hospital | Medical expenses, daughter | $1,105.35 |
| Tri–State Contract, Inc. | Repair tile in residence | $697.83 |
| First Mississippi Nat'l Bank | Signature loan, renewed | $27,500.00 |
| Peoples Bank | Signature loan, renewed | $46,000.00 |
| Peoples Bank | Signature loan, renewed | $34,000.00 |

7. Courts adopting the position that debts secured by real property are not consumer debts include the following: *In re Ikeda*, 37 B.R. 193, 194–95 (Bankr.D.Hawaii 1984); *Brunswick Employees Credit Union v. Nenninger (In re Nenninger)*, 32 B.R. 624, 626 (Bankr.W.D.Wis.1983); *Gibbs v. Randolph (In re Randolph)*, 28 B.R. 811, 813 (Bankr.E.D.Va.1983); *In re Stein*, 18 B.R. 768, 769 (Bankr.S.D.Ohio 1982). Other courts have reached the opposite conclusion. *In re Kelly*, 57 B.R. 536 (Bankr.D.Ariz.1986); *In re Bryant*, 47 B.R. 21, 23, 26 (Bankr.W.D.N.C. 1984).

8. Statements by Senator DeConcini and Congressman Edwards indicate that "[a] consumer debt does not include a debt to any extent the debt is secured by real property." 124 Cong. Rec.S. 17,406 (daily ed. Oct. 6, 1978) (statement of Senator DeConcini); 124 Cong.Rec.H. 11,090 (daily ed. Sept. 28, 1978) (statement of Congressman Edwards).

9. "[The] definition [of consumer debt] is adapted from the definition used in various consumer protection laws." H.Rep. No. 95–595, 95th Cong. 1st Sess. (1977); S.Rep. No. 95–989 2nd Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808.

the definition of consumer credit. *See Baskin v. G. Fox and Co.*, 550 F.Supp. 64 (D.Conn.1982); *Adema v. Great Northern Development Co.*, 374 F.Supp. 318 (D.Ga. 1973); *Whiteside v. Douglas County Bank*, 146 Ga.App. 888, 247 S.E.2d 558 (1978). After noting the similarities between the definitions in the Truth in Lending Act and the Bankruptcy Code, the court in *In re Almendinger*, 56 B.R. 97 (Bkrtcy. N.D.Ohio 1985) adopted the profit motive definition when applying section 707(b). Because we believe that the profit motive definition is a correct standard in light of the plain meaning of the statute and its legislative history, we also adopt that standard. *Accord, In re Bell*, 65 B.R. 575 (Bkrtcy.E.D.Mich.1986). Accordingly, the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit.

Applying the profit motive test, we find that the district court misclassified some of appellants' debts. In regard to the three loans secured by the Booths' residence, the district court correctly looked to the use to which the money was put. Accordingly, the $11,000 loan and the $133,000 loan were properly classified as nonconsumer related debt. The district court erred, however, in its classification of the entire $152,507.99 as consumer debt. Only $75,000 was used to pay off the mortgage on the residence; the remainder, $77,507.99, was applied to the marina venture. Only the initial $75,000 may be properly characterized as consumer debt.

Similarly, the district court erred in its determination that a signature loan, no matter what use to which it is put, is always consumer debt. The Code makes no distinction between secured and unsecured debt, and we can discern no reason why the use of funds flowing from an unsecured loan may not be examined when determining the proper classification of the debt. This scrutiny is consistent with the application of the profit motive test as an overall standard for classifying debt under section 707(b). Therefore, the $46,000 and $34,000 loans used in the marina and warehouse ventures were improperly classified by the district court as consumer debt.

The ultimate break-down of the Booths' debts is as follows:

Consumer Debt: $310,303.18 owed to nine creditors. This figure does not include an undetermined amount for state and federal taxes for the year 1986.

Business Debt: $332,187.99 owed to six creditors.

## III. APPLICATION OF SECTION 707(b)

By its own language, section 707(b) only applies in a Chapter 7 proceeding in which the debts are "primarily" consumer debts. Even if the filing of the petition is in fact a substantial abuse of the bankruptcy procedure, a case may not be dismissed under this provision unless this prerequisite is satisfied. *Accord, Bell*, at 578. The controlling inquiry, therefore, is whether or not the Booths' indebtedness is *primarily* consumer in nature in light of the fact that the amount of their consumer debt, though less than their business debt, is owed to more creditors. We hold that it is not.

It has been noted, we believe correctly, that "primarily" suggests an overall ratio of consumer to nonconsumer debts of over fifty percent. Furthermore, the consumer debts should be evaluated not only by amount, but by their relative number. *In re Restea*, 76 B.R. 728, 735 (Bkrtcy.D.S.D. 1987). The ratio of consumer to nonconsumer debt in the instant case, even allowing for $50,000 in additional taxes, is not great enough under these facts to justify dismissal under section 707(b).

## IV. CONCLUSION

The debts involved in this case, while including some consumer debts, cannot be said to be primarily composed of debts of that character. Consequently, the bankruptcy court's dismissal power under section 707(b) may not be utilized. Even if this Court were to determine that the Booths' utilization of a Chapter 7 procedure is a substantial abuse of that chapter, that in itself is not grounds for dismissal. For that reason, this Court does not now ad-

dress the propriety of the factors set out by the district court for determining the existence of a "substantial abuse." This case is REVERSED and REMANDED for proceedings not inconsistent with this opinion.