**In re Doris R. LAURY–NORVELL, Debtor.**

**Bankruptcy No. B93–10400.**

United States Bankruptcy Court, N.D. Ohio, E.D.

July 21, 1993.

Ishmael C. Childs, Cleveland, OH, for debtor.

Dean Wyman, Cleveland, OH, for U.S. Trustee.

David O. Simon, Cleveland, OH, trustee.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This case came on for an evidentiary hearing on the United States Trustee's (UST) motion to dismiss. The UST moved for dismissal on the bases that primarily all of the Debtor's debts are consumer debts and that the granting of relief would be a substantial abuse of the provisions of this chapter. 11 U.S.C. § 707(b).

The Debtor is a married woman who has been separated from her husband since December of 1991. The Debtor's husband does not live with the Debtor and does not provide any money toward her support. The Debtor's husband filed bankruptcy and received a discharge thereby leaving the Debtor as the sole obligor on their co-debts.

The Debtor is a licensed practical nurse and is registered with two nursing referral agencies. Her work is irregular and seasonal. She earns between $13.50 and $15.00 per hour. In 1992 she earned $32,-000.00. In 1991 she earned $26,000.00. Her schedules show she earns a monthly net income of $1,841.73. Her testimony reflected that such amount varies depending upon availability of work.

The Debtor is the sole owner of her residence. She has owned her current residence since 1967. Her schedules reflect that the home is valued at $32,000.00. Upon cross-examination at trial, however, the Debtor testified, equivocally, that she has been told that the home is worth $42,-000.00 to $45,000.00. (Debtor's Depo., p. 13).

The Debtor's two adult daughters and a grandchild live with her. Dawn Marie, is a full-time graduate student at Kent State. She works part-time as a teacher's assistant and has been living with the Debtor since July of 1992. Denise, is employed full-time. Denise and her daughter, Deangela, a 7 year old, have been living with the Debtor since February of 1992. The Debtor testified that she anticipated that her daughters would be living with her temporarily. The Debtor further testified that neither daughter makes any contributions toward the Debtor's expenses. There was no evidence presented regarding whether either daughter was able to make any such contributions. The record reflects that one daughter moved in with the Debtor due to a separation from her husband. The other daughter had some medical concerns precipitating her return to the Debtor's home.

The Debtor testified that primarily all of her debts, both secured and unsecured, are consumer debts. Her petition also reflects that fact. The Debtor's amended Schedule J, Current Expenditures of Individual Debtor, reflects monthly expenses of $2,440.05. The Debtor's scheduled net monthly income is $1,841.73.

Section 707(b) provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an

individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Under 707(b) of the Code, there are two substantive requirements. First, one's debts must be primarily "consumer" in nature. Secondly, granting of relief would be a substantial abuse of Chapter 7. Presumably, most consumer debtors have debts that are primarily consumer debts. Thusly, it does not follow that debtors will be turned away from the bankruptcy court in droves under 707(b) simply because their debts are primarily consumer debts. David G. Epstein, *et al.*, *2 Bankruptcy*, p. 436 (1992).

Section 101(8) of the Code defines a consumer debt as meaning a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. 101(8). In determining this particular requirement under 707(b), specific focus is to be placed upon the "use" of the money. *Id.* The nature of the collateral, the business of the creditor, and the form of the loan are irrelevant. *Id.*

The most significant difficulty in adjudicating matters premised under 707(b) is found in the consideration of the "substantial abuse" element. This occurs as a result of the tension between the "fresh start" feature of 524 and 707(b)'s denial of relief objective. Furthermore, the term "substantial abuse" is not defined under the Code. An earlier version of 707(b) which purported to establish a formula reflecting substantial abuse was not adopted *See*, S.Rep. No. 65, 2–4, 90–91; 130 Cong. Rec.S. 5358 (daily ed. April 27, 1983) (Remarks of Sens. Dole, Thurmond and Metzenbaum). Rather than adopt a definitive formula, the "substantial abuse" phrase was adopted in the final version. Quite significantly, however, the committee report on the final version of Senate Bill 445 indicates that the rules were intended to uphold "creditors' interests in obtaining repayment where such payment would not

be a burden." Additionally, the committee report suggests that when a debtor "can meet his debts without difficulty when they become due, use of Chapter 7" constitutes a substantial abuse. S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983).

Some courts have considered the following factors in determining whether substantial abuse has occurred: (1) the ratio of the debtor's future income to the debtor's liabilities; (2) the debtor's general conduct before the court (i.e., good faith); or (3) the nature and purpose of the debt. *In re Cook*, 110 B.R. 544 (Bankr.N.D.Okl.1990); *In re Latimer*, 82 B.R. 354 (Bankr.E.D.Pa. 1988); *In re Bryant*, 47 B.R. 21 (Bankr. W.D.N.C.1984).

Pursuant to the Sixth Circuit's *In re Krohn*, 886 F.2d 123 (6th Cir.1989) decision, the movant needs only to show an ability of the debtor to repay a significant amount of unsecured debts under a Chapter 13 plan. Egregious behavior, such as repeated bankruptcy filings evidencing a lack of good faith, fraud, impropriety or evidence of misconduct, may also be established. *See also*, *In re Shands*, 63 B.R. 121 (Bankr.E.D.Mich.1989).

█ As was found in *Krohn*, the Court finds that the Debtor's debts in the instant action are primarily consumer. Thus, the Court is left to decide whether granting relief would result in substantial abuse of the provisions of this chapter. Generally, substantial abuse may be found where the debtor is dishonest or non-needy. *See*, *Krohn*, *supra*, at 126. Whether a debtor is dishonest or non-needy is to be determined from the totality of the circumstances. *Id.* Factors to be considered when determining a debtor's honesty include: (a) good faith and candor in filing schedules and other documents; (b) the extent of the debtor's purchases just prior to filing bankruptcy; and (c) whether the debtor was forced into Chapter 7 by unforeseen or catastrophic events. *Id.*

█ In the present matter, the record contains instances where the Debtor undervalued her assets or overvalued expenses. The Debtor's house was listed at $10,000.00

to $13,000.00 less than what she believed it to be worth. Further, the Debtor's schedule J was impeached upon the Debtor's cross-examination testimony with respect to furnace repairs, transportation costs, charitable contributions, property insurance, and life, accident and health insurance premiums. The record also suggests that these inaccuracies and inconsistencies should be attributed to the Debtor's counsel rather than the Debtor. The Debtor's counsel argued that his client should not be held accountable for inaccuracies he caused.

The Debtor testified that her separation from her husband, the current divorce proceedings and her husband's discharge in bankruptcy have had a catastrophic effect on the Debtor. In that same time period, the Debtor was caused to undertake the additional task of housing her two children and grandchild due to their own unfortunate circumstances. Evidence regarding "eve of bankruptcy" purchasing was not presented to the Court. Having considered the foregoing evidence in conjunction with the mandates of *Krohn*, the UST has not shown by a preponderance of the evidence that this Debtor is dishonest.

The Debtor's ability to repay her debts out of future earnings, alone, may be sufficient to warrant dismissal. *Id.* Other factors relevant to whether the Debtor is non-needy include: a) whether the debtor enjoys a stable source of future income; b) whether the debtor is eligible for adjustment of her debts through Chapter 13 of the Bankruptcy Code; c) whether there are state remedies with the potential to ease her financial predicament; d) the degree of relief obtainable through private negotiations; and e) whether her expenses can be reduced significantly without depriving her of adequate food, clothing, shelter and other necessities. *Id.* at 126–27.

The UST argues that if the Debtor's expenses were augmented to be consistent with her deposition testimony, that the Debtor would have sufficient disposable income to pay her debts off in a thirty-six month period. This argument is rebutted by evidence that the Debtor's income is not stable. In addition to the "as needed" basis on which she works, the Debtor testified that in 1992 she worked an inordinate amount of overtime and double shifts to the detriment of her health and that she did not believe she would be capable of working such a substantial amount of hours in the future. That testimony was credible and was not controverted.

Based upon the totality of the circumstances, the Debtor's conduct and debt posture do not comport with the standards enunciated by the Sixth Circuit in *Krohn*, *supra*. Accordingly, the Motion to Dismiss is denied.

IT IS SO ORDERED.