**In re Kim A. ALMENDINGER, Debtor.**

**Bankruptcy No. 585–691.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 16, 1985.

---

**2.** 11 U.S.C. § 1129(a)(10); and see § 1124.

**3.** *Id.*

Marc P. Gertz, trustee.

Howard L. Sokolsky, William E. Schonberg, Cleveland, Ohio, for debtor.

### FINDING AS TO 707(b) MOTION

H.F. WHITE, Bankruptcy Judge.

On August 7, 1985, this court upon its own motion pursuant to 11 U.S.C. section 707(b) entered an order requiring the debtor to appear for examination and bring with him certain records for the purpose of determining whether his chapter 7 petition should be dismissed as a substantial abuse of the provisions of that chapter. On the same date the court entered another order directed to all creditors listed on debtor's Schedule A-3 as having unsecured claims without priority. Twenty notices were issued to such creditors at various addresses. The court stated in its order that:

[I]n order to aid the court's duties as provided for by section 707(b) it is necessary that the creditors submit to the court an itemization of their claims setting forth the type of goods and services provided to the debtor including payments made thereon by the debtor for the period from January 1, 1984 up to and including July 31, 1985.

Only two of the creditors so notified responded; their replies indicated that the majority of debts on the accounts for the period in question were for cash advances.

A hearing on the motion was held on September 3, 1985. On September 16, 1985, Marc P. Gertz, trustee of the estate of the debtor, filed an adversary complaint objecting to the discharge of the debtor. On October 4, 1985, this court entered an order holding in abeyance its determination of the section 707(b) motion until the final determination of the adversary proceeding. The parties have recently indicated to the court that they have reached a compromise agreement settling those claims of the estate against the debtor, and asked the court to rule upon its own motion.

The court has already expressed its uneasiness with being cast in the dual role of adducer as well as arbiter of the evidence in deciding its section 707(b) motion. *In re Grant*, 51 B.R. 385, 393 (Bankr.N.D.Ohio 1985). In the instant case, it enlisted the aid of unsecured creditors in ascertaining the facts necessary to make a determination of whether there is a "substantial abuse." This new section of the Bankruptcy Code was passed in response to an active lobby waged by the consumer credit industry to alleviate some of the perceived abuses of the bankruptcy system. *Id.* at 390–392. *See also, In re Edwards*, 50 B.R.

933, 13 Bankr Ct.Dec. (CRR) 250, 253–254 (Bankr.S.D.N.Y.1985). Proponents of the new section argued that billions of dollars of consumer debts were being discharged in chapter 7 liquidations by debtors who could have easily repaid a significant portion of that debt with future income. 51 B.R. at 391. But when the court turned to the very segment of our economy for whose benefit this reform was enacted, those creditors turned a deaf ear. Why should this court become their torchbearer in light of their apathy?

■ The court acted *sua sponte* when it saw a potential abuse of the Code. Although the motion may not be brought at the suggestion of any creditor, *In re Christian*, 51 B.R. 118 (Bankr.D.N.J.1985), the court is not precluded from enlisting the aid of creditors in making its determination of whether there is a substantial abuse of the liquidation provisions of the Code.

The debtor listed unsecured debts in the sum of $119,486.00, all of which was debt accumulated on credit card accounts. The debtor has been a stockbroker for the last three and one-half years at Prescott, Ball & Turben, Inc. His personal income for 1983 was stated as being in the sum of $59,-647.79, and for 1984, the sum of $46,332.48. He received a disability pension for 1983 in the sum of $4,344.00, and in 1984, the sum of $4,488.00. His federal income tax refund for 1984 was in the sum of $8,482.79. The debtor's testimony at the section 707(b) hearing was that he suffered significant investment losses in late 1984, and that he used his numerous credit cards primarily to secure cash advances to pay off investment losses and to reinvest in the market in hopes of recouping those losses. The records which he submitted to the court for its examination support that testimony. Ironic though it may sound, he testified that he didn't use his credit cards for "frivolous purchases," such as vacations. He further testified that he purchased very few goods and services with those cards, with the exception of some baby furniture for his newborn daughter.

Section 707(b) applies only to "a case filed by an individual whose debts are *primarily consumer debts.*" 11 U.S.C. sect. 707(b) (emphasis added). The Code defines consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. sect. 101(7). Legislative history revealed that the definition of consumer debt was derived from the definition used in various consumer protection laws. *In re Burgess*, 22 B.R. 771, 772 (Bankr.M.D.Tenn.1982). *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 22 (1978) and H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963. A review of cases decided under the Truth In Lending Act shows that when the credit transaction involves a *profit motive*, it is outside the definition of "consumer" credit transaction for the purposes of the Act. *See Baskin v. G. Fox & Co.*, 550 F.Supp. 64 (D.Conn.1982); *Adema v. Great Northern Development Co.*, 374 F.Supp. 318 (D.Ga. 1983); and *Whiteside v. Douglas County Bank*, 146 Ga.App. 888, 247 S.E.2d 558 (1978). The definition of "consumer" credit transaction under the Act is markedly similar to the definition of consumer debt under the Bankruptcy Code. *Cf.* 15 U.S.C. sect. 1602(h) *with* 11 U.S.C. sect. 101(7). Likewise, the Act exempts credit transactions involving credit primarily for business, commercial, etc. purposes, and again, the profit motive seems to be the decisive factor. *Sapenter v. Dreyco, Inc.*, 326 F.Supp. 871 (E.D.La.1971), *aff'd* 450 F.2d 941 (5th Cir.), *cert. den.* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120; *Thorns v. Sundance Properties*, 562 F.Supp. 882 (D.Nev. 1983), *rev'd on other grounds* 726 F.2d 1417 (9th Cir.); and *Puckett v. Georgia Homes, Inc.*, 369 F.Supp. 614 (D.S.C.1974).

■ Based upon the foregoing evidence and this court's understanding of the meaning of "consumer debts," the court finds that the debtor is not "an individual whose debts are primarily consumer debts." Section 707(b) is inapplicable. A separate order shall issue hereon.