**In re George BELL, Debtor.**

**Bankruptcy No. 85–02150–R.**

United States Bankruptcy Court,
E.D. Michigan.

Sept. 26, 1986.

Iris Rubin, Southfield, Mich., for debtor.

## ORDER VACATING ORDER OF DISMISSAL

STEVEN W. RHODES, Bankruptcy Judge.

### I.

On January 13, 1986, this Court entered an order, reported at 56 B.R. 637, dismissing the debtor's Chapter 7 bankruptcy petition pursuant to 11 U.S.C. § 707(b). The Court found that Bell's debts were primarily consumer debts and that granting him relief under Chapter 7 would be a substantial abuse of the provisions of that chapter because he was able to repay a substantial part of his debts. The finding that the debts were primarily consumer debts was based to some extent on the testimony at the earlier hearing, but to a greater extent on Bell's failure to "seriously contend otherwise." 56 B.R. at 640.

On appeal however, Bell apparently did seriously contend otherwise, and on June 30, 1986, the District Court remanded the matter to this Court for "an evidentiary hearing for the purpose of determining Bell's primary purpose for incurring his debts."

### II.

That hearing has been held, and upon full consideration of the evidence the Court concludes that Bell's debts are not primarily consumer debts and that therefore the earlier order dismissing the petition should be vacated.

At the hearing, the Court and Bell's counsel reviewed with Bell each of his debts as listed in Schedule A. Bell testified that the following debts were incurred primarily for personal purposes:

| | |
|---|---|
| Internal Revenue Service | 5,477.12 |
| Bank of Commonwealth | 33,000.00 |
| City of Detroit | 15,000.00 |
| Chase Manhattan Bank | 9,756.37 |
| Citibank | 5,303.31 |
| Chase Advantage Credit | 1,812.55 |
| National Bank of Detroit | 976.20 |
| Manufactures Bank | 3,627.49 |
| Hudsons | 10,130.31 |
| Saks | 2,101.24 |

| | |
|---|---|
| Detroit Municipal Credit Union | 2,152.94 |
| Amoco | 269.21 |
| Total (12) | $89,606.74 |

Bell further testified that in the time period just before he filed his bankruptcy petition, he had invested in two businesses. In February of 1984 he purchased a grocery store which he operated as a corporation under the name, "Bell's Market, Inc." He intended this to be a passive investment, but found that over time, he was required to devote more attention to it. After one year, the business failed and the corporation filed a petition under Chapter 7 at about the same time that Bell filed his own petition. Bell incurred the following debts primarily for the business purposes of Bell's Market:

| | |
|---|---|
| Michigan National Bank | 104,000.00 |
| Detroit Edison | 3,000.00 |
| Hani Najor | 35,000.00 |
| Total (3) | $142,000.00 |

Bell incurred an additional debt by executing a personal guaranty of a note to Comerica Bank for a loan to Group Assoc. Management Co., a management consulting firm. Bell owned 15–20% of this firm, strictly as a passive investment. Bell became obligated on this guaranty when the firm ceased business shortly before his bankruptcy. The current obligation on this note is $43,846. In addition, Bell is obligated to Comerica Bank for $1,864.84 on a personal loan, for $2,240.06 on a personal charge card, and for $5,378.95 on a personal cash reserve account. Thus, the total obligation to Comerica is $53,329.90; although Bell incurred some portion of this debt for personal purposes, the obligation was incurred primarily for business purposes.

Thus, the total of the debts incurred primarily for personal purposes is $89,606.74 and the total of the debts incurred primarily for business purposes is $195,329.90.

### III.

11 U.S.C. § 101(7) defines a consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose." Thus, the first issue is whether the debts Bell incurred in connec-

tion with his interest in Bell's Market and Group Assoc. Management Co. are consumer debts.

In *In re Almendinger*, 56 B.R. 97 (Bankr.N.D.Ohio 1985), the debtor had accumulated $120,000 in debt on credit card accounts. Because these debts were incurred to cover the debtor's losses in the stock market, the court concluded that the debts were not incurred primarily for personal purposes. Relying on the cases defining the term "consumer debt" in various consumer protection laws such as the Truth in Lending Act, the Court concluded that "when the credit transaction involves a *profit motive*, it is outside the definition of 'consumer credit'." Thus, the court concluded that the test for determining whether a debt was incurred primarily for a business or commercial purpose, as opposed to a personal, family or household purpose, is whether the debt was incurred with a profit motive.

This Court agrees that the appropriate test to distinguish between consumer debts and other debts is that set forth in *In re Almendinger, supra.*

Plainly, the debts that Bell incurred in connection with his interest in Bell's Market, Inc., and Group Assoc. Management Co. were incurred with a profit motive, even though that purpose failed. Thus, these debts, totaling $195,329.90, are not consumer debts.

### IV.

The only issue remaining is whether Bell's debts are primarily consumer debts, given that he owes 12 creditors $89,604.74 for primarily consumer debts and 4 creditors $195,329.90 for primarily non-consumer debts.

The Court concludes that it is appropriate in defining the phrase "primarily consumer debt" to give more weight to the portion of total debt that is consumer debt and less weight to the portion of the total number of debts that are consumer debts. Thus, where the total amount of the consumer debt is substantially less than the total amount of non-consumer debt, the debts cannot be considered primarily con-

sumer debts, even if there is a greater number of consumer debts. On the other hand, when the amount of the consumer debt is substantially greater than the amount of the non-consumer debt, the debts must be considered primarily consumer debts even if there is a greater number of non-consumer debts. Finally, when the consumer debt and the non-consumer debts are approximately equal, the Court should consider the relative numbers of consumer and non-consumer debts.

■ In this case, the Court has determined that only 31% of the total of Bell's debt is consumer debt; under the foregoing analysis, the Court concludes that his debts are not primarily consumer debts.

Therefore, the petition is not subject to dismissal under 11 U.S.C. § 707(b), even though the petition constitutes a substantial abuse of the Bankruptcy Code due to Bell's ability to repay a substantial part of his debts.

Accordingly, it is hereby ordered that the order of January 13, 1986, dismissing the debtor's petition is vacated, and that the Clerk enter the debtor's discharge forthwith.