**In re George Liviu RESTEA and Georgeta (NMN) Latcu-Restea, d/b/a Medical Doctors, Debtors.**

**Bankruptcy No. 186–00265.**

United States Bankruptcy Court, D. South Dakota.

July 22, 1987.

Andrew J. Schmid, Office of the U.S. Trustee, Minneapolis, Minn., U.S. Trustee.

Curt R. Ewinger, Rice & Bowen, Aberdeen, S.D., for debtors.

Peter J. Buttaro, Aberdeen, S.D., pro se.

James M. Cremer, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, S.D., for Virginia Adams and Dakota Midland Hosp.

Robert M. Ronayne, Aberdeen, S.D., for Feliciana Bank & Trust Co.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court on a motion to dismiss a Chapter 7 case under Bankruptcy Code Section 707(b) filed by Attorney Andrew J. Schmid on behalf of United States Trustee William P. Westphal ("Trustee") on March 16, 1987. Trustee substantively alleges that because George and Georgeta Restea's ("debtors' ") debts are primarily consumer debts and granting them relief under Chapter 7 constitutes "substantial abuse" pursuant to Bankruptcy Code Section 707(b), their case should be dismissed. Debtors conversely contend that the motion should be denied because: 1) the United States Trustee, pursuant to the 1986 amendments, may not move for dismissal under Bankruptcy Code Section 707(b) because their Chapter 7 case was commenced before the effective date of the Bankruptcy Judges, United States Trustees, and Family Farmers Bankruptcy Act of 1986 ("Act") (Trustee does not have standing); 2) it was at the "request" or "suggestion" of a party in interest, which clearly violates Section 707(b) dismissal conditions; 3) there are not "primarily consumer debts" under Section 707(b) when only 53

percent of the applicable unsecured/secured debts are consumer debts; and 4) there is not "substantial abuse" under Section 707(b) when, over the next several years, only minimal amounts of "disposable income" *may* otherwise be available for creditors.

## BACKGROUND

Debtors, who are husband and wife, filed for relief under Chapter 7 of the Bankruptcy Code on October 6, 1986. Both are physicians who were raised and educated in Romania and then came to the United States. They have specialized in internal medicine.

According to the debtors' schedules, amendments, and creditors' proofs of claims and supporting documents, debtors' assets and liabilities are reflected as follows:

### A–1 Creditors Having Priority

| Creditor | Debt |
| --- | --- |
| IRS | $12,542.25 |

### A–2 Creditors Holding Security

| Creditor | Security | Debt | Value of Security |
| --- | --- | --- | --- |
| Clinton Bank & Trust | Automobile | $ 5,616.72 | $ 8,500.00 |
| Norwest Bank | Real Property (First Mortgage) | $100,000.00 | $175,000.00 |
| Virginia Adams | Real Property (Second Mortgage) | $ 70,450.59 | $ 75,000.00 |
| The Peoples Bank | Automobile | $ 13,516.06 | $ 14,000.00 |

### A–3 Creditors Having Unsecured Claims Without Priority

| Creditor | Nature of Debt | Debt |
| --- | --- | --- |
| Citibank Mastercard & Visa | Miscellaneous | $22,500.00 |
| Dakota Midland Hospital | Salary and expense advance which was offset against collected accounts receivable. | $34,526.12 |
| Feinstein's | Miscellaneous | $ 67.00 |
| J.C. Penney's | Miscellaneous | $ 820.00 |
| Attorney | Legal services for business incorporation and past-due accounts receivable collection. | $ 1,355.31 |
| Manufacturers Hanover | Credit Card | $ 2,436.73 |
| Sears | Miscellaneous | $ 545.89 |
| Norwest Bank | This is the amount outstanding after Norwest Bank sold Geta's Diesel Services' inventory and equipment. Norwest had a first security interest. George Restea was one of the partners. | $21,432.24 |
| Rosehill Cemetery | Loan | $ 1,260.00 |
| Pierson Ford | Auto Work | $ 4,600.00 |
| Feliciana Bank & Trust | Remaining amount owed from automobile sale. Amended proof of claim filed on December 17, 1986. | $15,588.86 |

On November 19, 1986, the Chapter 7 Trustee held the first meeting of creditors. *See* 11 U.S.C. § 341. Attorney Cremer, representing creditors, Dakota Midland Hospital and Virginia Adams, attended the meeting. At the meeting, he suggested or

requested that the Trustee investigate this file for "substantial abuse" dismissal under Section 707(b).[1]

On November 20, 1986, the automobile secured to Feliciana Bank and Trust was abandoned and, thereafter, sold by that creditor. Three days later, on November 23, 1986, Norwest Bank was granted relief from stay to foreclose on its mortgage (debtors' residence). On January 27, 1987, Clinton Bank and the debtors entered into a reaffirmation agreement on the automobile secured to the bank.

Since filing, debtors have relocated to northern Florida. Both are practicing under a one-year contract at an annual salary of $120,000. Estimated office expenses during this period are $166,629.60. Debtors have also purchased $28,866 worth of medical equipment which is payable over three years, and their annual licensing fees total $2,400. With raising their four-year-old, debtors' estimated annual living expenses are $35,808. Therefore, including income tax liability, their estimated disposable annual income for 1987 is approximately $16,000. No other evidence on debtors' future net income was presented.

## ISSUES

1) Whether the United States Trustee, pursuant to the 1986 amendments, may properly move for dismissal under Bankruptcy Code Section 707(b) when the Chapter 7 case was commenced before the effective date of the Act and it was otherwise improper prior to those amendments;

2) Whether the Trustee's motion should be denied when it was at the request or suggestion of a party in interest made during a Section 341 meeting, which "request or suggestion" otherwise clearly violates dismissal conditions under Section 707(b);

3) Whether there are "primarily consumer debts" under Section 707(b) when only 53 percent of the applicable unsecured/secured debts are consumer debts; and

4) If so, whether there is "substantial abuse" under Section 707(b) when, over the next several years, only minimal amounts of "disposable income" *may* otherwise be available for payment to creditors.

## LAW

### A. First Issue

As to the first issue, the Court holds that the United States Trustee, pursuant to the 1986 amendments, may properly move for dismissal under Bankruptcy Code Section 707(b) even though the Chapter 7 case was commenced prior to the effective date of the Act. This is based on the following discussion.

At the outset, the Court notes that it has already held that the amendments made by Subtitle B of Title II of the Act applied to cases commenced prior to the effective date of the Act. *In re Erickson Partnership*, 68 B.R. 819 (Bankr.D.S.D.1987), *aff'd*, 74 B.R. 670 (D.S.D.1987) (allowed conversion of pending Chapter 11 and 13 cases to cases under Chapter 12).

Under the 1986 Act, Bankruptcy Code Section 707(b) was amended as follows:

After notice and a hearing, the court, on its own motion *or on a motion by the United States trustee, but* not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. (The underlined phrase was added by the 1986 Act.)

---

1. In response to the Court's inquiry as to whether he agreed with Attorney Ewinger's summary of the facts, Mr. Buttaro, the Chapter 7 Trustee, stated:

"I agree to the facts, Your Honor. It was brought to my attention about possible substantial abuse at the 341 meeting by Mr. Cremer, and he at that time asked me to investigate the possibility of a substantial abuse situation."

Debtors contend that this amendment allowing the United States Trustee to move for dismissal under Section 707(b) does not apply to their case because they filed for Chapter 7 relief on October 6, 1986, which was almost two months before the effective date of the Act (November 26, 1986). *See In re Erickson Partnership*, 68 B.R. 819, 820 (Bankr.D.S.D.1987), *aff'd*, 74 B.R. 670 (D.S.D.1987). Their position is that allowing the United States Trustee to move for dismissal under this section "retroactively" applies the 1986 Act amendments, which was not intended by Congress. Trustee conversely insists that because United States Trustees amendments under Subtitle A of Title II apply prospectively to cases pending on the effective date and his motion was filed after that date, he may properly move for dismissal under Section 707(b).[2]

Prior to the 1986 amendments, courts held that the United States Trustee is a "party in interest" under Section 707(b) and, therefore, may not properly move for dismissal under Section 707(b). *In re Christian*, 51 B.R. 118 (Bankr.D.N.J.1985). *See also In re Whitby*, 51 B.R. 184, 186 n. 1 (Bankr.E.D.Mich.1985).

■ With respect to application of Subtitle A, Title II Act amendments, the Transition Rules, in pertinent part, read as follows:

"Sec. 302 EFFECTIVE DATES; APPLICATION OF AMENDMENTS

(a) *General Effective Date*—Except as provided in subsections (b), (c), (d), (e) and (f), this Act and the amendments made by this Act shall take effect 30 days after the date of the enactment of this Act."

None of the various subsections modified the application of this provision.[3] The question, therefore, simply is whether the plain language, "shall take effect 30 days after the date of the enactment of this Act," evidences a clear Congressional intent that these amendments apply prospec-

tively to pending cases. The Court finds that the plain language of this provision does evidence a clear Congressional intent of prospective applicability.

Based on the foregoing, the Court holds that the United States Trustee, pursuant to the 1986 amendments, may properly move for dismissal under Section 707(b) even though the Chapter 7 case was commenced prior to the effective date of the Act, which otherwise was improper prior to those amendments.

## B.   Second Issue

■ As to the second issue, the Court holds that the Trustee's motion is denied because it was at the request or suggestion of a party in interest made during a first meeting of creditors, which "request or suggestion" clearly violates the dismissal conditions of Bankruptcy Code Section 707(b). This is based on the following discussion.

Bankruptcy Code Section 707(b), in pertinent part, reads:

"After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, *but not at the request or suggestion of any party in interest*, may dismiss...." (emphasis added)

Debtors contend that because Attorney Cremer, who represents two creditors with substantial nonconsumer debt owing them, requested or at least suggested during the first meeting of creditors that the Trustee investigate this for "substantial abuse" dismissal under Section 707(b), which is clearly prohibited under that section, the motion should be denied. While not disputing that this may be a "request or suggestion," the Trustee simply insists that this is proper if made to the Chapter 7 trustee during a first meeting of creditors. Neither party offered any authority on this point.

For explanation or meaning, the proper starting point is the language of Section 707(b) itself. *In re Christian*, 51 B.R. 118,

---

**2.** This amendment was part of Section 219 of the Act.

**3.** This is unlike family farmer amendments in *Erickson Partnership*, because Subsection (1)(c) provided:

"The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title II of the United States Code before the effective date of this Act."

119 (Bankr.D.N.J.1985), *citing Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), as authority. That section clearly and unequivocally states that the court or the United States Trustee may bring a motion to dismiss for "substantial abuse," *"but not at the request or suggestion of any party in interest."* 11 U.S.C. § 707(b) (emphasis added). It does not say unless the party in interest (creditor) makes the suggestion or request at a first meeting of creditors.

The issue, therefore, is whether there is an implied creditors' first meeting exception whereby creditors who attend that meeting may suggest or request that the Chapter 7 trustee file a motion to dismiss under Section 707(b). This presupposes that the trustee otherwise agrees that a party in interest may neither request nor suggest a dismissal by writing or calling the Chapter 7 trustee. A contrary position would make the language meaningless.

The Joint Explanatory Statement of the Committee of Conference supports the conclusion that Congress intended Chapter 7 trustees to assist the United States Trustee in investigating fraud or abuse. In pertinent part, the committee report reads:

> The conferees anticipate that the panel trustee will work closely in conjunction with the United States Trustee to assist in the discharge of the specific authority granted under Section 707(b). This would include bringing to the United States trustee's attention any information or evidence of fraud or abuse which may provide the basis for dismissal of a case under Section 707(b). The U.S. Trustee may, in his discretion, bring that information to the attention of the court. The conferees anticipate that panel trustees will frequently appear in court regarding the motions filed by the U.S. Trustee under Section 707(b), as amended. Such appearances will be in their capacity as panel trustee and not as a representative of the U.S. Trustee.

Joint Explanatory Statement of the Committee of Conference, *reprinted in* 134 Cong.Rec. H8999 (daily ed. Oct. 2, 1986).

The main purpose of a first meeting of creditors is for the Chapter 7 trustee, who is appointed by the United States Trustee, to determine, with the debtor present and, if need be, under oath, whether assets have been concealed, improperly disposed of, or objection to discharge grounds exist. 2 *Collier on Bankruptcy* ¶ 341.02, at 341–7 (15th ed. 1987). This is part of his/her duties as estate administrator. *Id.* To properly prepare, the experienced Chapter 7 trustee reviews his/her file, including the debtor's schedules. Section 707(b) clearly conditions a dismissal motion on an independent and uninfluenced review by the Chapter 7 trustee who then presents his/her findings to the United States Trustee's office for further action. If a different result was intended, why did Congress include the "request" or "suggestion" language in its 1984 enactment and not modify it in the 1986 Act. It necessarily follows that this meeting was also not intended as the forum for a creditor, especially an attorney who represents two major nonconsumer creditors, to request or suggest a dismissal under Section 707(b). To hold otherwise would render the statutory language meaningless, allowing creditors to suggest or request a dismissal at a Section 341 meeting, which they otherwise cannot directly do, ultimately resulting in debtor harassment.

*Collier,* a noted authority, supports this conclusion:

> The substantial abuse issue must be raised by the court or by the United States trustee in those judicial districts incorporated into the United States trustee system and "not at the request or suggestion of any party in interest." Apparently if a party in interest does raise the substantial abuse issue the court may not hear it. Moreover, it is likely that once a party in interest raises the issue in a case, the court may not subsequently raise the same issue because it was initially suggested by a party in interest. This precludes creditors from filing harassing motions that would increase the expense of a bankruptcy case or from seeking dismissal after losing a discharge or dischargeability action.

4 *Collier on Bankruptcy* ¶ 707.05, at 707–13, 14 (15th ed. 1987). *See also* Judge

Gindin's Section 707(b) policy analysis in *In re Christian*, 51 B.R. 118, 120–21 (Bankr. D.N.J.1985).

### C. Third Issue

As to the third issue, the Court holds that there are not "primarily consumer debts" under Section 707(b) when only 53 percent of the applicable unsecured/secured debts are consumer debts and, therefore, the motion is denied. This is based on the following discussion.

Under Bankruptcy Code Section 707(b), a substantial abuse dismissal is available only in cases in which debts are "primarily consumer debts." 11 U.S.C. § 707(b). The term, "consumer debt," is defined as follows:

"... debt incurred by an individual primarily for a personal, family, or household purpose."

11 U.S.C. § 101(7).

■ Its legislative history indicates that, "[A] consumer debt does not include a debt to any extent that the debt is secured by real property." 124 Cong.Rec. H11,909 (Sept. 28, 1978); S17,406 (Oct. 6, 1978); 4 *Collier on Bankruptcy* ¶ 707.06, at 707–15 (15th ed. 1987). Nevertheless, at least one court, without any discussion, has considered it a consumer debt. *In re Bryant*, 47 B.R. 21, 23 (Bankr.W.D.N.C.1984). This Court disagrees with that court and believes that the legislative history controls and is the better view.

Legislative history also reveals that its definition was derived from various consumer protection laws. S.Rep. No. 989, 95th Cong., 2d Sess. 22 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Almendinger*, 56 B.R. 97, 99 (Bankr.N.D.Ohio 1985). A review of the cases decided under the Truth In Lending Act shows that when the credit transaction involves a *profit motive*, it is outside the definition of a "consumer" credit transaction for the purposes of the Act. *Id.* The definition of "consumer" credit transaction is markedly similar to the definition of consumer debt under the Bankruptcy Code. *Id.* Therefore, in deciding whether a credit card transaction is consumer debt, the Court must determine whether it was for a business purpose. *Id.*

What constitutes "primarily" for Section 707(b) purposes defies precise definition. It is not defined in the Code. *Collier* states, "The term 'primarily' indicates that all the debts need not be consumer debts but that consumer debts must be a substantial component of the indebtedness." 4 *Collier on Bankruptcy* ¶ 707.07, at 707–17. (15th ed. 1987). Webster defines primarily as "principal" or "fundamental."

■ Trustee insists that there are clearly "primarily consumer debts" in the instant case because minimally 69 percent of the *unsecured* (A–3) scheduled debts are consumer debts. The Court does not agree with this assessment because the Dakota Midland Hospital (salary and expense advance offset against accounts receivable), Norwest Bank (diesel partnership), and legal expenses (business incorporation and accounts receivable) are not consumer, but business debts totaling $57,313.67. Consumer unsecured debt totals $47,327.48 and, thus, is approximately 45 percent of the unsecured debt. The remaining applicable consumer "secured" debt is $19,132.78 (debts secured by real property are not included). Overall, therefore, consumer debt is approximately 53 percent of all applicable debt in this case. Mindful of the statutory presumption in bankruptcy of granting debtors relief [4] and the underlying "fresh start" policy basis, the Court cannot find that 53 percent constitutes the "principal" debt. *See In re Bell*, 65 B.R. 575 (Bankr.E.D.Mich.1986); *but cf. In re Bryant*, 47 B.R. 21 (Bankr.W.D.N.C.1984). This is further supported by the fact that the debtors have reaffirmed their automobile "consumer" debt with the Clinton Bank.

As to the third issue, the Court holds that there are not "primarily consumer debts" under Section 707(b) when 53 percent of the applicable unsecured/secured debts are consumer debts.

---

**4.** Section 707(b)'s last sentence unequivocally states: "There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b).

### D. Fourth Issue

As to this issue, because the prior issues resolve this matter, the Court need not address this issue. However, it notes the following: 1) there is not "substantial abuse" as a matter of law just because two medical doctors are involved; and, 2) because of the recent relocation, foreign background and education, past unsuccessful medical practice experience, only one-year salary guarantee, and high medical practice overhead, the Court finds the future earnings of these two debtors in the next three years is, at best, highly speculative.

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the debtors is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.