**In re Cleatus Lanford CLARK, Debtor.**

**Bankruptcy No. 7–89–00398–BKC–HPB.**

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

June 14, 1989.

Joseph E. Wolfe, Norton, Va., for debtor.

Julie L. Gregory, Roanoke, Va., Office of U.S. Trustee.

Cynthia D. Kinser, Pennington Gap, Va., trustee.

James R. Garner, Memphis, Tenn., for Great Western Consumer Finance Group.

## MEMORANDUM OPINION
## AND ORDER

H. CLYDE PEARSON, Chief Judge.

The United States Trustee for this District has filed the following: 1) a motion to stay the issuance of the discharge; 2) a motion for a Rule 2004 examination of the debtor; and 3) in open court at the hearing on the foregoing two motions, a motion to dismiss this Chapter 7 case under 11 U.S.C. § 707(b).

Upon hearing of the within motions, the debtor tendered to the record copy of a letter dated April 24, 1989, from James R. Garner, Senior Associate Counsel of Great Western Consumer Finance Group ("Great Western") in behalf of its apparent subsidiary, City Finance Company ("City Finance") in Kingsport, Tennessee, creditor herein. The letter is attached hereto as "Appendix A" to this memorandum.

The debtor objected to the United States Trustee's motions. However, since the debtor was present in court, debtor's counsel and counsel for the United States Trustee agreed to proceed with the Rule 2004 examination, as the debtor would not be inconvenienced, and the same was conducted. The court finds that since the parties have conducted the Rule 2004 examination, the same is ORDERED approved.

From the statements of counsel, the evidence presented and review of the court file, it appears that the motions in question are essentially the motions of Great Western as appears from the letter. Since the issue before the court is a narrow one, no briefing is required by the court; and the court will proceed to render its opinion and Order upon said motions.

From the standpoint of fairness, it is necessary to recite the chronology of events leading up to these motions. The essential events are as follows: On March 6, 1989, the debtor, a coal miner employed in the southwestern Virginia coal fields, filed his Chapter 7 petition in this court. The clerk transmitted the § 341 meeting Notice to all creditors and interested parties scheduling a § 341 meeting for April 5, 1989, and, further, giving notice that the last day for filing §§ 523 and 727 complaints was June 5, 1989. City Finance mailed a written request to the clerk of this court dated March 21, 1989, received by the clerk on March 24, 1989, requesting a copy of the debtor's schedules, which was mailed by the clerk to City Finance on March 31, 1989. The report of the Chapter 7 panel trustee reflects that the § 341 meeting was held as scheduled on April 5, 1989, at which the panel trustee proceeded to conduct the same and examined the debtor who appeared at said meeting with his attorney. No creditors of this debtor appeared at the said meeting. On April 24, 1989, the letter (Appendix A) was written to the United States Trustee with copy to debtor's counsel and was received by debtor's counsel, according to the affixed stamp on said Appendix, on April 28, 1989. On May 16, 1989, the United States Trustee filed the foregoing motions which were set for hearing on June 6, 1989.

An examination of the contents of the letter of April 24, 1989, would indicate possible alleged false statements which the debtor, according to said letter, made to City Finance upon which the loan in question was granted. It reflects a potential cause of action under § 523 which would be assertable by the creditor under Rule 7001 within the timeframe fixed by the clerk's Notice for so doing. No adversary proceeding has been filed by this creditor and no other activity by this creditor is reflected in the file other than the letter in question.

■ The letter, in effect, urges the United States Trustee under 11 U.S.C. § 707(b) to have this debtor's case dismissed. The letter concludes with the request that the United States Trustee advise the writer of his decision to comply with this request. Counsel for the United States Trustee stated in open court that the motions at issue here were generated exclusively by the letter of April 24, 1989, and, in effect, the United States Trustee was acceding to the wishes of counsel for Great Western by utilizing his position as United States Trustee in preparing and filing said motions. The panel trustee who conducted

the § 341 creditors' meeting did not appear at the hearing and counsel for the United States Trustee acknowledged that the panel trustee has raised no issue concerning the application of § 707(b) to this debtor's case.

11 U.S.C. § 707 states as follows:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The 1978 Reform Act contained the language in § 707(b) that only the court on its own motion, but not at the request or suggestion of any party in interest, had jurisdiction to determine if abusive filing of petitions came to the court. The section was amended by the Act of 1986 to clarify and, as presently written, to provide that the United States Trustee may bring before the court questions of abusive filing. The Conference Report relating to the Amendment of 1986 in part states as follows:

The conferees anticipate that the *panel trustee* will work closely in conjunction with the United States Trustee to assist in the discharge of the specific authority granted under Section 707(b). This would include bringing to the United States trustee's attention any information or evidence of fraud or abuse which may provide the basis for dismissal of a case under Section 707(b). The U.S. Trustee may, in his discretion, bring that information to the attention of the court. The conferees anticipate that panel trustees will frequently appear in court regarding the motions filed by the U.S. Trustee under Section 707(b), as amended. Such appearances will be in their capacity as panel trustee and not as a representative of the U.S. Trustee. (HR Conf Rep No. 99–958, 99th Cong., 2nd Sess 46–47 (1986)) (emphasis added)

The recent amendment was fully dealt with in the case of *In re Restèa,* 76 B.R. 728, 17 CBC2d 132 (Bankr.D.S.D.1987). In a well-reasoned and fully researched opinion construing the new section, Judge Ecker concluded that the United States Trustee's motion should be denied because it was at the request or suggestion of a party in interest. At page 733, the Court construes the plain language of § 707(b) prohibiting parties in interest from requesting or suggesting dismissals in the following language:

The main purpose of a first meeting of creditors is for the Chapter 7 trustee, who is appointed by the United States Trustee, to determine, with the debtor present and, if need be, under oath, whether assets have been concealed, improperly disposed of, or objection to discharge grounds exist. 2 *Collier on Bankruptcy* ¶ 341.02, at 341–7 (15th ed. 1987). This is part of his/her duties as estate administrator. *Id.* To properly prepare, the experienced Chapter 7 trustee reviews his/her file, including the debtor's schedules. Section 707(b) clearly conditions a dismissal motion on an independent and uninfluenced review by the Chapter 7 trustee who then presents his/her findings to the United States Trustee's office for further action. If a different result was intended, why did Congress include the "request" or "suggestion" language in its 1984 enactment

and not modify it in the 1986 Act. It necessarily follows that this meeting was also not intended as the forum for a creditor, especially an attorney who represents two major nonconsumer creditors, to request or suggest a dismissal under Section 707(b). To hold otherwise would render the statutory language meaningless, allowing creditors to suggest or request a dismissal at a Section 341 meeting, which they otherwise cannot directly do, ultimately resulting in debtor harassment.

*Collier*, a noted authority, supports this conclusion:

> The substantial abuse issue must be raised by the court or by the United States trustee in those judicial districts incorporated into the United States trustee system and "not at the request or suggestion of any party in interest." Apparently if a party in interest does raise the substantial abuse issue the court may not hear it. Moreover, it is likely that once a party in interest raised the issue in a case, the court may not subsequently raise the same issue because it was initially suggested by a party in interest. This precludes creditors from filing harassing motions that would increase the expense of a bankruptcy case or from seeking dismissal after losing a discharge or dischargeability action.

4 *Collier on Bankruptcy* ¶ 707.05, at 707–13, 14 (15th ed. 1987). *See also* Judge Gindin's Section 707(b) policy analysis in *In re Christian*, 51 B.R. 118, 120–21 (Bankr.D.N.J.1985).[1]

It should be noted that the Congress did not say that only the court on its own motion or the U.S. Trustee's motion may be heard on the question of abuse and that creditors and other parties in interest could conduct any other activity except filing of motions. The statute, in very clear and unambiguous language, states that such motion cannot be "at the request or suggestion of any party in interest." The Code and Rules of this court are replete with provisions relating to applications and motions; and if Congress had intended that creditors and interested parties were prohibited from filing motions but could engage in any other activity relating to this subject, it would have done so.

The Congress, by enacting § 707(b), sought to provide authority to the courts to dismiss cases where there is a "substantial abuse" by such Chapter 7 debtors. There is no definition of substantial abuse and the U.S. Trustee announced to the court that the Office of the United States Trustee has no guidelines to determine what is substantial abuse. This court is mindful that the Congress specified not only "abuse" but it must be a "substantial" abuse. There must be a firm documented finding of substance and not merely surmise. A cursory examination of the facts here does not, in this court's view, represent a case of substantial abuse. This is particularly so since the debtor's counsel indicates that the facts appearing from the Rule 2004 examination reflect a change of circumstances with increased child support and other amounts following the application which the debtor filed with City Finance. However, since the court holds herein that the motion of the United States Trustee was inspired solely by the letter from Great Western and upon the authority of *In re Restea, supra*, the motion will be dismissed and the motion to stay discharge denied.

■ Section 707(b) gives the court authority, as set forth therein, to determine substantial abuse questions and prohibits the request or suggestion by creditors obviously for the purpose of preventing harrassing proceedings in Chapter 7 cases by creditors. The section, nevertheless, does not provide penalties or sanctions for creditors who utilize the U.S. Trustee's Office as a conduit to circumvent the section. It may well be that under 11 U.S.C. § 105 the court could exercise certain restraints or impose certain sanctions upon creditors who seek to do so. However, it would appear to the court that the solution found in *In re Restea, supra*, of dismissing the

---

1. The recent case of *In re Busbin*, 95 B.R. 240 (Bankr.N.D.Ga.1989) appears to be contrary; however, the holding there relates to the peculiar facts before the court.

motion because of the violation would be a suitable remedy in the absence of more aggravating circumstances or continuing efforts by a creditor to circumvent the provisions of § 707(b).

From the foregoing, it is the opinion of the court that the motions to stay the discharge and dismiss the case be and the same are ORDERED denied.

### APPENDIX A

April 24, 1989

Mr. John E. Waites

U.S. Trustee—Region 4

1835 Assembly Street—Room 1108

Columbia, SC 29201

Re: Cleatus Lanford Clark

U.S. Bankruptcy Court, Western District of Virginia

BK No. 89–00398–BKC—HPB

Filed: March 6, 1989

Dear Mr. Waites:

This letter is written on behalf of our City Finance Company office in Kingsport, TN, which is a creditor in the above-styled Chapter 7 Bankruptcy petition. It is City's position that the filing of a Chapter 7 by the Debtor in this case is a substantial abuse of the provisions of the Bankruptcy Act. As a result, we are asking you as U.S. Trustee for the 4th Region to consider filing a Motion to Dismiss this petition pursuant to Section 707(b) of the Bankruptcy Act.

In support of our request, we submit the following for your consideration:

(1) The Debtor understated his income on his schedule of income and expenses. On June 20, 1988, Debtor submitted his loan application to City Finance reflecting *net* income of $792 every two weeks or $1,714 monthly. On his statement of income and expenses in his bankruptcy petition, he listed only $1,450 net income monthly despite working for the same employer where he has worked for the past seven years. Therefore, it appears he has understated his net income by $264 a month.

(2) His list of expenses in his bankruptcy petition is clearly inaccurate. His attorney has indicated that he plans to surrender the only asset that secures the only two secured debts he has, yet he includes monthly payments in his list of expenses for four debts which he intends to discharge (City Finance—$120, Dominion Bank–$100, Volunteer Credit–$126 and Roger's Auto Sales–$200) totaling $546.

(3) On his loan application to City Finance, he indicated that his child support payment was $250 monthly and that he was living with his sister and paying no rent or utilities. On his bankruptcy schedule of expenses, he reflected $350 a month in child support, $250 in rent and $160 in utilities. His bankruptcy petition reflects that he is still living at the same address which he claimed to be living rent and utility free in June 1988.

(4) The Debtor's total indebtedness, both secured and unsecured, consists of two secured debts and six unsecured debts for a grand total of $7,951.79. Even with a 15% administrative fee added, it would only take approximately $150 a month to pay *all* of his debts in a 60–month plan ($250 a month for a 36–month plan).

(5) A summary of the discrepancies in his loan application and bankruptcy schedules reflects that he can easily afford to pay all of his debts in a Chapter 13:

| Income: | $1,714 | Loan Application | |
|---|---|---|---|
| | −1,450 | Bankruptcy Schedules | |
| | 264 | Understatement of Income | |
| | | Loan Application | Bankruptcy Schedule |
| Expenses: | $250 | Child Support | $350 |
| | 0 | Rent | 250 |
| | 0 | Utilities | 160 |
| | $250 | | $760 |
| | $760 | Bankruptcy Schedule | |
| | − 250 | Loan Application | |
| | $510 | Overstatement of Expenses | |
| | $546 | Monthly installment payment expenses included in bankruptcy schedules which would be discharged in Chapter 7 or paid through the plan in a Chapter 13. | |
| Totals: | $1,714 | Actual Income | |
| | −660 | ($1,716 bankruptcy schedule expenses less $510 overstated expenses and less $546 improper items included in monthly expenses) | |
| Net Disposable Income | $1,054 | | |

Obviously, the Debtor can afford to fund a Chapter 13 plan paying 100% of unsecured debts.

Based on all of the foregoing, we respectfully request that you consider filing a Motion to Dismiss this case pursuant to § 707(b). The last day for filing of objections to discharge under § 727 or complaints to determine the dischargeability of a debt under § 523(c) is scheduled for June 6, 1989. Please advise me of your decision.

Thanks in advance for your attention to this matter.

> Very truly yours,
> /s/ James R. Garner
> James R. Garner,
> Senior Associate Counsel

JRG:dgr

cc: Wolfe & Farmer, Attorneys for Debtor
> P.O. Box 655
> Norton, VA 24273