In re Ross Alan **HLAVIN** and Lenys Beatriz Hlavin, Debtors.

**No. 07–59978.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

Sept. 30, 2008.

James E. Nobile, Nobile & Thompson Co., L.P.A., Hilliard, OH, for Debtors.

*MEMORANDUM OPINION DENYING DEBTORS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

## I. Introduction

This contested matter is before the Court on the motion for partial summary judgment ("Motion") (Doc. 46) filed by Ross Alan Hlavin and Lenys Beatriz Hlavin ("Debtors") in response to the United States Trustee's request for dismissal of their bankruptcy case for abuse under 11 U.S.C. § 707(b)(1), which applies only if the Debtors have "primarily consumer debts[.]" The Debtors contend that two home loans on which they are obligated are not consumer debts because the loans are secured by mortgages on their real property. They also argue that they do not have primarily consumer debts because their business-related debts outnumber their consumer debts and were the primary cause of their bankruptcy filing.

The Motion thus raises two issues. The first is whether a loan incurred "primarily for a personal, family, or household purpose" within the meaning of § 101(8) ("Consumer Purpose") is a consumer debt if it is secured by a mortgage on a debtor's real property. The second issue is what standard should be applied to determine whether a debtor's liabilities are primarily consumer debts. Resolution of this question will require the Court to choose between several different judicially-formulated tests for determining § 707(b)'s applicability.

For the reasons stated below, the Court concludes that the Debtors' home loans—which they concede were incurred primarily for a Consumer Purpose—are consumer debts even though they are secured by mortgages on the Debtors' real property. The Court also concludes that, because the aggregate dollar amount of their consumer debt exceeds 50% of their total liabilities, the Debtors have primarily consumer debts. The Court, therefore, denies the Motion.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this contested matter pursuant

to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

### III. Factual and Procedural Background

Prior to filing a joint voluntary petition on December 11, 2007 ("Petition Date"), the Debtors accumulated debt from the general expenses they incurred in raising four children and pursuing various business ventures that ultimately failed. The parties agree that if the Court were to focus solely on the Debtors' unsecured liabilities arising from their family and business activities, then it would conclude that the total dollar amount of their non-consumer debts would exceed the aggregate amount of their debts incurred for a Consumer Purpose. But prior to the Petition Date the Debtors also purchased a home and, in connection with the purchase, obtained a loan secured by a first mortgage. They later obtained a second loan (together with the first home loan, "Home Loans") and a second mortgage (together with the first mortgage, "Home Mortgages"). And, as of the Petition Date, the aggregate amount owed on the Home Loans was high enough that if the Home Loans are deemed to be consumer debts, then the consumer to non-consumer debt ratio changes significantly. In particular, the amount of the Home Loans plus the Debtors' other consumer debt constitutes approximately 59% of the Debtors' total liabilities. Regardless of how the Home Loans are classified, however, the number of their non-consumer debts exceeds the number of their consumer debts by approximately two to one.

On February 26, 2008, the United States Trustee ("UST") filed a motion to dismiss the Debtors' case ("Motion to Dismiss") (Doc. 29). On March 5, 2008, the Debtors filed a response (Doc. 33) to the Motion to Dismiss. At a pretrial conference held on May 5, 2008, the parties reported that a dispute remained regarding whether the debts are primarily consumer or non-consumer debts, and the Court established a deadline for filing dispositive motions. On May 15, 2008, the Debtors timely filed the Motion. On June 18, 2008, the UST filed an objection to the Motion (Doc. 54).

### IV. Arguments of the Parties

The Debtors contend that their debts are primarily non-consumer debts on two grounds. First, they argue that the Home Loans—which they concede were incurred primarily for a Consumer Purpose—are non-consumer debts because they are secured by the Home Mortgages. The UST's response is that a debt incurred primarily for a Consumer Purpose is a consumer debt even though it is secured by a debtor's real property.

Second, the Debtors argue that they have primarily non-consumer debts because their business-related debts outnumber their consumer debts and were the primary cause of their filing for bankruptcy. For its part, the UST contends that numerosity should not be outcome determinative. Rather, the UST argues, an individual's liabilities should be found to be primarily consumer debts if the dollar amount of consumer debt exceeds 50% of the total debt.

### V. Legal Analysis

#### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this contested matter by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.*, 503

F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak*, 503 F.3d at 577; *Skowronek v. Am. S.S. Co.*, 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr. S.D.Ohio 2003).

Here, the parties agree, and the Court finds, that no genuine issue of material fact exists as to the two issues raised by the Motion. The Court, therefore, may decide these issues as a matter of law.

## B. Debt Secured by Real Property

 Under § 707(b)(1), the Court "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). To determine whether the Debtors' liabilities are primarily consumer debts, the Court must first decide the threshold issue of whether a loan incurred primarily for a Consumer Purpose is a consumer debt if it is secured by a debtor's real property.

 The Bankruptcy Code defines consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Nothing in § 101(8) suggests that a debt meeting this definition nonetheless mutates into a non-consumer debt merely because it is secured by real property. Rather, under the plain language of § 101(8), a debt incurred by an individual primarily for a Consumer Purpose is a consumer debt regardless of whether it is secured or unsecured. And the Court must follow the plain statutory language.[1]

---

1. *See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (citations and internal quotation marks omitted)). *See also Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 470 (6th Cir.2008) ("The common theme in the Supreme Court's bankruptcy jurisprudence over the past two decades is that courts must apply the plain meaning of the Code unless its literal application would produce a

Indeed, the majority of courts have held that a debt secured by a debtor's real property is a consumer debt if it is incurred primarily for a Consumer Purpose. *See, e.g., Price v. United States Tr. (In re Price)*, 353 F.3d 1135, 1138 (9th Cir.2004) ("[T]he statutory scheme so clearly contemplates that consumer debt include debt secured by real property that there is no room left for any other conclusion." (internal quotation marks omitted)); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 (9th Cir.1988) ("A literal reading of the [Bankruptcy] Code's simple language leads inexorably to the conclusion that consumer debt includes secured debt."); *Cox v. Fokkena (In re Cox)*, 315 B.R. 850, 855 (8th Cir. BAP 2004) ("With respect to debt secured by real property, if the debtor's purpose in incurring the debt is to purchase a home or make improvements to it, the debt is clearly for family or household purposes and fits squarely within the definition of a consumer debt under § 101(8)."); *Morris v. Zabu Holding Co. (In re Morris)*, 385 B.R. 823, 829 (E.D.Va. 2008) (holding that a debt incurred for a personal, family, or household purpose is a consumer debt even though it is secured by the debtor's real property); *In re Naut*, 2008 WL 191297 at *5 (Bankr.E.D.Pa. Jan. 22, 2008) (same); *In re Hoffner*, 2007 WL 4868310 at * 1 (Bankr.D.N.D. Nov. 21, 2007) (same); *In re Davis*, 378 B.R. 539, 546–47 (Bankr.N.D.Ohio 2007) (same); *King v. Wells Fargo Bank, N.A. (In re King)*, 362 B.R. 226, 230 (Bankr.D.Md. 2007) (same).

The Debtors do not argue that the Home Loans were incurred for a business purpose or for any purpose other than a Consumer Purpose. Nor do they argue

that the language of § 101(8) is ambiguous. Rather, their argument rests on statements made by two members of Congress that "[a] consumer debt does not include a debt to any extent the debt is secured by real property." 124 Cong. Rec. H11,089 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong. Rec. S17,406 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini). The Debtors also rely on several older decisions in which courts, following this legislative history, have held that a debt secured by the debtor's real property is never a consumer debt. *See In re Restea*, 76 B.R. 728, 734 (Bankr. D.S.D.1987); *In re Stein*, 18 B.R. 768, 769 (Bankr.S.D.Ohio 1982).

■ Legislative history, however, does not override the plain language of a statute. *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The language before us expresses Congress' intent ... with sufficient precision so that reference to legislative history ... is hardly necessary."); *United States v. Hunter (In re Walter)*, 45 F.3d 1023, 1027 n. 2 (6th Cir.1995) ("We do not delve into the legislative history ... [because] the language of the statute is plain so it may be interpreted on its face."); *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208, 210 (6th Cir.1993) ("[R]esort to legislative history for interpretation is improper when a statute is unambiguous." (internal quotation marks omitted)).

In light of the plain language of § 101(8)—and the Supreme Court pronouncements regarding the application of clear statutory language—the Court con-

---

result demonstrably at odds with the intent of Congress."); *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371 (6th Cir.2007) ("As with any question of statutory interpretation, we must first look to the lan-

guage of the statute itself. If the language of the statute is clear, then the inquiry is complete, and the court should look no further." (citations omitted)).

cludes that loans incurred primarily for a Consumer Purpose are consumer debts even though they are secured by mortgages on a debtor's real estate. Thus, the Court finds that the Home Loans are consumer debts.

## C. Primarily Consumer Debts

■ Anticipating the Court's ruling that the Home Loans constitute consumer obligations, the Debtors contend that they nonetheless have primarily non-consumer debts because the number of such debts exceeds the number of their consumer liabilities.[2] Taking the contrary position, the UST argues that the Debtors have primarily consumer debts because the aggregate dollar amount of their consumer debt exceeds 50% of their total liabilities.

Courts have interpreted the phrase "primarily consumer debts" in several different ways. The majority view is that a debtor's liabilities are primarily consumer debts if the aggregate dollar amount of such debts exceeds 50% of the debtor's total liabilities. *See Hoffner,* 2007 WL 4868310 at *2 ("The majority of courts that have considered the issue have found that 'primarily' means more than half of the total dollar amount owed."). *See also Stewart v. United States Tr. (In re Stewart),* 175 F.3d 796, 808 (10th Cir.1999) (holding that a debtor has "primarily consumer debts" if the aggregate amount of consumer debt is more than 50% of the total debt); *Kelly,* 841 F.2d at 913 (same); *Naut,* 2008 WL 191297 at *7 (same); *In re*

*Beacher,* 358 B.R. 917, 920 (Bankr. S.D.Tex.2007) (same).

There are a number of minority approaches. Some courts consider the relative dollar amount of consumer and non-consumer debt and, if those amounts are "approximately equal," the number of consumer and non-consumer debts as well. *See In re Bell,* 65 B.R. 575, 577–78 (Bankr. E.D.Mich.1986) ("[W]here the total amount of the consumer debt is substantially less than the total amount of non-consumer debt, the debts cannot be considered primarily consumer debts, even if there is a greater number of consumer debts. On the other hand, when the amount of the consumer debt is substantially greater than the amount of the non-consumer debt, the debts must be considered primarily consumer debts even if there is a greater number of non-consumer debts. Finally, when the consumer debt and the non-consumer debts are approximately equal, the Court should consider the relative numbers of consumer and non-consumer debts."). Other courts hold that a debtor has primarily consumer debts only if the dollar amount of such debts exceeds 50% of the debtor's total liabilities and, in addition, the consumer debts outnumber the non-consumer debts. *See In re Vianese,* 192 B.R. 61, 68 (Bankr.N.D.N.Y.1996). Still other courts hold that a debtor has primarily consumer debts only if the amount of consumer debt actually being discharged and not reaffirmed exceeds

---

**2.** Relying on the Court's decision in *Swartz v. Strausbaugh (In re Strausbaugh),* 376 B.R. 631 (Bankr.S.D.Ohio 2007), the Debtors also argue that their non-consumer debts led to the bankruptcy filing and this makes their debts primarily non-consumer in nature. The Court need not rule on the issue of whether the non-consumer debts—as opposed to the Debtors' need to make mortgage payments on Home Loans in excess of $400,000—precipitated their bankruptcy filing. Even if the

non-consumer debts were the cause, *Strausbaugh* provides no support for the Debtors' position. In *Strausbaugh,* the Court held that a single debt incurred in part for a business purpose but primarily for a personal, family, or household purpose is a consumer debt. *Id.* at 639. The Court did not address whether the cause of a debtor's filing for bankruptcy is relevant to determining the primary nature of the debtor's liabilities.

50% of the debtor's total liabilities. *See Restea*, 76 B.R. at 734 ("Overall, therefore, consumer debt is approximately 53 percent of all applicable debt in this case. Mindful of the statutory presumption in bankruptcy of granting debtors relief and the underlying 'fresh start' policy basis, the Court cannot find that 53 percent constitutes the 'principal' debt." (footnote omitted)). The *Restea* court held that this result was "supported by the fact that the debtors have reaffirmed their automobile 'consumer' debt[,]" which made the percentage of consumer debt being discharged and not reaffirmed approximately 48% of the total debt. *Id.*[3]

■ In light of these various "plausible readings of the statutory language," *Brilliance Audio*, 474 F.3d at 372, the Court cannot find that the meaning of the phrase "primarily consumer debts" as used in § 707(b)(1) is unambiguous. "Thus, the meaning of the statute cannot be determined merely by reference to the statutory text." *Id.* Rather, the Court must look to persuasive authority, including "legislative history, policy rationales, and the context in which the statute was passed." *Id.*

In summarizing the context in which § 707(b)(1) was passed, and the policy rationale motivating its enactment, the Sixth Circuit has explained:

> Section 707(b) was among the consumer credit amendments to the Bankruptcy Code enacted in 1984. These amendments were passed in response to an increasing number of Chapter 7 bankruptcies filed each year by non-needy debtors. Under prior practice, aside from potential § 523(a) exceptions, § 707(a) dismissals, and § 727(a) objections to discharge, debtors enjoyed an unfettered right to a "fresh start" under

Chapter 7, in exchange for liquidating their nonexempt assets for the benefit of their creditors. Section 707(b) introduces an additional restraint upon a debtor's ability to attain Chapter 7 relief. . . . Bankruptcy judges now have discretion to dismiss a consumer case when the filing is abusive.

> In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.

*In re Krohn*, 886 F.2d 123, 125–26 (6th Cir.1989) (citations and internal quotation marks omitted). In short, § 707(b)(1) was passed in part to protect creditors against abusive Chapter 7 filings. Another court has opined that § 707(b)(1) was added to protect against the abuse of Chapter 7 due to its "consequent pressure to drive up the cost of consumer credit[,]" *In re Grant*, 51 B.R. 385, 390 (Bankr.N.D.Ohio 1985), to the detriment of lower and middle income borrowers who often need such credit. *Id.* at 391.

■ Based on the context in which § 707(b)(1) was passed and the policy concerns it was intended to address, the Court adopts the majority view and concludes that a debtor has "primarily consumer debts" if the aggregate amount of his or her consumer debt exceeds 50% of the total debt. To hold otherwise and determine the primary nature of debts based on the relative number of consumer versus

---

**3.** Here, the Debtors have filed a statement of their intention to reaffirm the Home Loans (Doc. 7).

non-consumer obligations could lend itself to pre-bankruptcy manipulation. For example, a debtor with total consumer debts of $50,000 owed on five credit cards could attempt to avoid § 707(b)(1)'s abuse analysis by consolidating the $50,000 of debt onto one credit card, leaving the debtor with only one consumer debt to weigh against a larger number, but lesser amount, of non-consumer debts. If this same debtor owes several small tax debts to multiple taxing authorities—which the Sixth Circuit has held is non-consumer debt, *see IRS v. Westberry (In re Westberry)*, 215 F.3d 589, 594 (6th Cir.2000)—then the debtor would have a greater number of non-consumer debts than consumer debts. If a bankruptcy court were to determine the nature of the debts based on numerosity, then the debtor would not be subject to scrutiny under § 707(b)(1)—contrary, it would seem, to Congress's aim of addressing the perceived abuse of Chapter 7. By contrast, if the primary nature of a debtor's liabilities is measured by the relative amount of debt, then a prospective debtor planning ahead to avoid a Chapter 7 dismissal might do so by paying down consumer debt, consistent with the policies behind § 707(b)(1).

For these reasons, the Court concludes that the appropriate method for ascertaining § 707(b)(1)'s applicability is to determine whether the aggregate amount of a debtor's consumer debt exceeds 50% of his/her total liabilities. If so, then § 707(b)(1) applies. Application of this methodology here leads to the inescapable conclusion that the Debtors' obligations are primarily consumer debts.

### VI. Conclusion

For the foregoing reasons, the Court holds that a loan incurred primarily for a Consumer Purpose is a consumer debt even if it is secured by a mortgage on a debtor's real property. The Court also concludes that a debtor has "primarily consumer debts" if the aggregate amount of consumer debt exceeds 50% of the total debt. The Court accordingly finds that the Debtors are not entitled to judgment in their favor as a matter of law. The Motion is therefore **DENIED**. The remaining issues in the Motion to Dismiss will be heard on October 20, 2008 at 9:30 a.m.

**IT IS SO ORDERED.**