**In re R. Michael NOLAN, Debtor.**

**Bankruptcy No. 91–21618 PAC.**

United States Bankruptcy Court, D. Colorado.

May 14, 1992.

Leslie K. Berg, Denver, Colo., for U.S. Trustee.

Benjamin Spitzer, Lakewood, Colo., for debtor.

## ORDER ON MOTION TO DISMISS

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the United States Trustee's motion to dismiss this proceeding pursuant to 11 U.S.C. § 707(b). The debtor filed a response to the motion and a hearing was held.

The matter is a core proceeding over which this Court has jurisdiction. 28 U.S.C. § 157(a)(2)(A).

The relevant facts are as follows. Mr. R. Michael Nolan (Debtor) filed a bankruptcy petition under Chapter 7 on August 27, 1991. The Debtor is a television sportscaster who received $167,000 in compensation for 1991 and he will receive $172,000 for 1992. In addition, he receives a $2,000

per year clothing allowance, health and life insurance benefits and is reimbursed for business related travel. He is employed pursuant to a contract which expires on January 29, 1994.

The Debtor rents a condominium in Denver and owns a condominium in Avon, Colorado. The monthly rent for the Denver condominium is $1320. He is current on the Avon property's $689 monthly mortgage payment and its $225 monthly maintenance fee.

In addition to the first mortgage, the Avon property is encumbered by a deed of trust executed by the Debtor on April 11, 1991, for the benefit of Steven Crone. That deed of trust secures a promissory note issued to Mr. Crone on the same date. The parties agree that Mr. Crone did not request the deed of trust. The apparent consideration was for monies Mr. Crone lent to the Debtor from time to time during the 1980s.

There is also a federal tax lien on the Avon property for $1,000 which attached after Mr. Crone's interest was recorded. On April 4, 1991, the Internal Revenue Service (I.R.S.) sent a letter to the Debtor's attorney requesting the exact legal description of the Avon property. The Debtor received a copy of the letter. His counsel responded to the letter on April 8, 1991. The Crone deed of trust was executed and recorded within a few days. The tax lien attached sometime thereafter.

The Debtor has been married twice and has children by both marriages. Pursuant to the divorce decree terminating his first marriage, he is obligated to pay $700 monthly in maintenance and support. One of the children of this marriage will be 21 in July of 1992 and the other will be 24 in September of 1992.

Pursuant to the divorce decree with his second wife, he is required to pay $800 per month in child support[1] and maintain medical and life insurance for the benefit of the children. Although not required to do so, the Debtor maintains insurance policies on the life of his children from the second marriage. (He has taken out loans against those policies as well as against his own policy.) Similarly, he gratuitously pays $325 per month for one of the children to attend a private school. The Debtor's Schedules I and J reflect that he pays a total of $2,600 in monthly alimony and child support payments, the amount he is actually obligated for is considerably less.

Other relevant items listed on the Debtor's budget include: a $200 per month clothing allowance, $100 per month for a cleaning service, $50 per month cleaning and laundry bill, $50 per month in charitable contributions and $200 per month for recreation, clubs and entertainment. The Debtor's monthly gross income is scheduled as $12,846.00 however, after the deductions and living expenses he has allowed himself there would be a $156 monthly deficit.

The Debtor's bankruptcy schedules, as amended[2], reflect approximately $297,-491.37 of secured and unsecured debt.[3]

---

1. His alimony obligations terminated after the bankruptcy petition was filed as his second wife remarried. The support obligations appear to be subject to cost-of-living increases.

2. In addition to the amendments the Debtor made to his schedules prior to the hearing on the trustees motion to dismiss, other omitted obligations were disclosed at the hearing.

| | |
|---|---:|
| Colorado Business Associates, Inc. | $108,000.00 |
| (mortgage on two condominiums in Thorton) | |
| I.R.S. (tax lien) | 1,000.00 |
| United Bank (Car loan) | 11,316.37 |
| Colonial Savings (mortgage on Avon condominium) | 58,500.00 |
| Mr. Crone (mortgage on Avon condominium) | 10,000.00 |
| Total | $188,816.37 |

There is an obligation to the State of Colorado of $4,747.34 for pre-petition taxes. Also, the obligation to American Express should have been listed at $7,865.29 rather than $334. Finally, he owes United Bank of Denver approximately $11,316.37 on a car loan.

3. The following are the Debtor's secured obligations:

The unsecured debt is $108,675 of which $50,000 relates to an unsecured judgment which his former father-in-law obtained against him in 1981.

The parties agreed that some of the Debtor's obligations were for non-consumer debt. The Court finds that the obligations which clearly constitute non-consumer debt are: $4,747.39 for state taxes, $108,000 for a mortgage on two condominiums in Thorton held as investment property, $1,000 for a federal tax lien, and $15,000 for federal taxes.

The parties dispute the classification of two of the remaining obligations. Specifically, there is controversy over the classification of $7,865.29 owed to American Express Centurion Bank and $12,827.48 owed to American Broadcast Employees Federal Credit Union (ABE).

The Trustee argues that the Debtor's bankruptcy is an abusive filing. He asserts that consumer debt constitutes the majority of Mr. Nolan's debt. The Trustee maintains that the debtor's pre-petition conduct, income and extravagant life style constitute a substantial abuse of the fresh start contemplated under the Bankruptcy Code. Finally, at the hearing on this matter, the Trustee made a request that the case be dismissed for bad faith under Section 707(a).[4]

Conversely, the Debtor contends that his case should not be dismissed for substantial abuse. He argues that the majority of his debt is not consumer debt. Alternatively, even if the majority is consumer debt, he maintains that it is not sufficient to be classified as "primarily consumer debts." In addition, he asserts that the facts and circumstances of his debt, employment contract and lifestyle do not warrant a determination of substantial abuse.

Section 707(b) provides for the dismissal of chapter 7 cases based upon substantial abuse. Specifically, it allows for dismissal of a case filed by a debtor whose "debts are primarily consumer debts if it (the Court) finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor."

■ The threshold inquiry is whether a debtor's obligations are primarily consumer debts. Consumer debt is a debt incurred by an individual primarily for a personal, family or household purpose. 11 U.S.C. § 101(8). Courts are divided over the issue of whether secured debt should be considered in the determination of consumer debt. *See* discussion in *In re Booth*, 858 F.2d 1051, 1054 (5th Cir.1988). This Court

His unsecured obligations are:

| | |
|---|---|
| Colorado Department of Revenue (state taxes) | $ 4,747.39 |
| I.R.S. (federal taxes) | 15,000.00 |
| American Express (credit line) | 7,865.29 |
| ABE (loan) | 12,827.48 |
| American Express (credit card) | 455.63 |
| American Express (credit card) | 800.00 |
| Citibank Classic (credit card) | 2,000.00 |
| Citibank Visa (credit card) | 2,066.29 |
| Citibank Preferred (credit card) | 3,242.00 |
| Discover (credit card) | 1,496.76 |
| First Interstate (credit card) | 202.62 |
| National Credit (credit card) | 2,031.18 |
| United Bank (line of credit) | 4,267.72 |
| United Bank (credit card) | 200.00 |
| Mr. Wells (1981 judgment on a personal loan) | 50,000.00 |
| John Hancock (loans against insurance policies) | 1,472.64 |
| Total | $108,675.00 |

**4.** At this time, due to lack of prior notice, the Court will not consider dismissal based upon Section 707(a).

agrees with those courts who resolved the classification issue based upon whether the debt was incurred in a transaction having primarily a profit or business motive and disregarded its secured or unsecured status as irrelevant. *Id.* at 1054–55; *see also In re Burns,* 894 F.2d 361 (10th Cir.1990) (deciding whether the debt involved in a non-dischargeability action was consumer debt so that the prevailing debtor was entitled to attorneys fees under Section 523(d)).

■ There are a variety of formulas which have been developed to determine if debts are "primarily" consumer debts. One court has determined that over 50% consumer debt is sufficient. *In re Bell,* 65 B.R. 575, 577–78 (Bankr.E.D.Mich.1986). At least one court has found that 53% was not enough to constitute primarily consumer debt. *In re Restea,* 76 B.R. 728, 734 (Bankr.S.D.1987). Other courts have found that the number of consumer debts must be considered in addition to the dollar amount. *E.g., Booth,* 858 F.2d at 1055; *In re Johnson,* 115 B.R. 159, 162 (Bankr. S.D.Ill.1990).

The better reasoned cases are those which determine if the debt is "primarily consumer debt" based upon whether the overall ratio of consumer to non-consumer debt exceeds fifty percent and then upon the number of consumer creditors to non-consumer creditors. *E.g., Booth,* 858 F.2d at 1055.

■ The Court finds that in the instant case the obligations to American Express and ABE are consumer debts. These debts are the only two over which any real dispute as to classification exists. Although the Debtor argued that the $7,865.29 owed to American Express was used for the payment of taxes, he did not offer any evidence to support his claim. There was no indication that the amount owed to American Express in August of 1991 was traceable to the October 1989 check for $8,967.20 payable to the I.R.S. which was drawn on his American Express account. A similar tracing problem exists with the $12,827.48 owed to ABE. He borrowed $12,000 from ABE on January 10, 1990 and a month later on February 9, 1991, issued a personal check in the amount of $8,841.16 to pay taxes. Again, no account statements or bank records were submitted by the Debtor to substantiate his claim. Based on the lack of evidence it would require an incredible leap of faith for this Court to find that the ABE proceeds were used for the tax payment and the August 1991 American Express obligation traced back to the 1989 check.

■ Based upon the Court's determination to include both the disputed American Express obligation and the ABE debt, the amount of consumer debt is $168,743.98 or 57% of the total debt.[5] In addition, there are only 3 non-consumer debt creditors (Colorado Business Association, the I.R.S. and the Colorado Department of Revenue) as opposed to 17 consumer debt creditors. Thus, the Debtor's obligations are primarily consumer debts.

■ The next determination to be made in this Section 707(b) inquiry is whether the granting of relief constitutes a substantial abuse.

The circuits are divided over what factors to consider to determine if there has been substantial abuse. The three main approaches are: a *per se* test of the ability to fund a chapter 13 plan, a totality of the circumstances test and a hybrid

5. United Bank (car loan) ... $ 11,316.37
American Express (credit line) ... 7,865.29
Colonial Savings (mortgage on Avon condominium) ... 58,500.00
Mr. Crone (promissory note) ... 10,000.00
ABE (loan) ... 12,827.48
American Express (credit card) ... 455.63
American Express (credit card) ... 800.00
Citibank Classic (credit card) ... 2,000.00
Citibank Visa (credit card) ... 2,066.29
Citibank Preferred (credit card) ... 3,242.00
Discover (credit card) ... 1,496.76
First Interstate (credit card) ... 202.62
National Credit (credit card) ... 2,031.18
United Bank (line of credit) ... 4,267.72
United Bank (credit card) ... 200.00
Mr. Wells (1981 judgment on a personal loan) ... 50,000.00
John Hancock (loans against insurance policies) ... 1,472.64
Total ... $168,743.98

which examines the ability to pay and mitigating factors.

The primary factor considered by the Eighth and Ninth Circuits is the debtor's ability to pay his debts when due as determined by his ability to fund a chapter 13 plan. However, they do not find that inability to pay shields a debtor from dismissal where bad faith is otherwise shown. *In re Harris*, 960 F.2d 74 (8th Cir.1992); *In re Kelly*, 841 F.2d 908, 914–15 (9th Cir.1988). This is frequently referred to as the *per se* test.

The Fourth Circuit determines substantial abuse on a case-by-case basis, in light of the totality of the circumstances. *In re Green*, 934 F.2d 568 (4th Cir.1991). The following factors are typically evaluated:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;

2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

3. Whether the debtor's proposed family budget is excessive or unreasonable;

4. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

5. Whether the petition was filed in good faith.

*Id.* at 572.

The third approach is followed by the Sixth Circuit. There the court examines the ability to repay creditors as the primary factor (not necessarily through a Chapter 13 plan), and it also considers other mitigating factors. *In re Krohn*, 886 F.2d 123, 126–27 (6th Cir.1989). The other factors are: whether the debtor enjoys a stable source of future income, whether he is eligible for chapter 13 relief, whether there are state remedies available, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving

him of adequate food, clothing, shelter and other necessities. *Id.* at 126. The Sixth Circuit found this approach to be consistent with the intent of Section 707(b) to deny Chapter 7 relief to the dishonest or non-needy debtor.

In *Krohn*, the court found substantial abuse, notwithstanding that the debtor did not qualify for chapter 13 relief. It stated:

inability to qualify under Chapter 13 should not be dispositive of whether there may be a Section 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy. The anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter 13 treatment can always avoid Section 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7.

*Id.* at 127; *see also, In re Scheinberg*, 134 B.R. 426 (D.Kan.1992); *In re Stratton*, 136 B.R. 804 (Bankr.C.D.Ill.1991). *Contra, e.g., In re Bartlett*, 128 B.R. 775 (Bankr. W.D.Mo.1991) (there cannot be substantial abuse where a debtor is not eligible for Chapter 13 relief).

The Court is persuaded by the Sixth Circuit's reasoning. Thus, the first consideration is the debtor's ability to repay creditors, not whether he qualifies for Chapter 13 relief. Then, an inquiry is made into any mitigating factors pertinent to the determination of substantial abuse.

 Applying those considerations to the facts at hand, the Court finds that Mr. Nolan is able to substantially repay his creditors and that the facts and circumstances of this case warrant a finding of substantial abuse. Although Mr. Nolan is not eligible for Chapter 13 relief because of the amount of his unsecured debt, other factors override the presumption that the Debtor is entitled to Chapter 7 relief.[6]

---

6. At the hearing, the parties thought that Mr. Nolan would qualify for Chapter 13 relief. Thus, the Debtor made much of the fact that his contract of employment expires on January 29, 1994, so that his ability to fund a 36 month plan

could not be guaranteed. In these economic times, the people who have certainty of employment through January of 1994 are limited. When the employment status of a debtor changes, as frequently occurs in Chapter 13

Furthermore, Mr. Nolan does appear to be eligible for Chapter 11 relief.

As for the other factors, the Court finds that Mr. Nolan has a stable source of income and he could easily begin immediately to make significant monthly payments on his consumer obligations by engaging in "old-fashioned belt tightening". For example, he could surrender the condominium in Avon in which he has no equity and uses only for pleasure. This would free up $914 per month for creditors. He could also easily reduce his excessive expenses for rent, entertainment, home maintenance, clothing and eliminate his payments for life insurance policies on his children and the $325 per month for his son's private schooling. These adjustments could result in a savings of at least $727 per month, leaving a total of $1641 available for payment to his creditors.[7] There are several private non-profit consumer credit agencies which assist debtors like Mr. Nolan in developing budgets and negotiations with creditors to establish payment plans.

The Court further finds that Mr. Nolan's intention to maintain his current lifestyle is not indicative of a needy debtor. Allowing the Debtor to retain the condominium in Avon (currently used twice a month) and the excessive expenses previously noted gives Mr. Nolan a "head start", rather than a fresh start. Furthermore, his financial difficulty is not the product of unforseen events. Although $50,000 of his unsecured debt is from a 1981 judgment against him, he clearly continued to incur consumer debt in excess of his ability to repay. Finally, the Court finds that Mr. Nolan attempted to evade the attachment of the I.R.S.'s lien on the equity in the Avon property by gratuitously executing a note and deed of trust to Mr. Crone just days after the I.R.S. requested a description of the property owned in Eagle county. This conveyance also appears suspect because the Chapter 7 petition was filed 136 days after the transfer of the note and deed of trust, so that it fell outside of the preference recovery period by only six weeks.

In conclusion, the Court finds that Mr. Nolan's debts are primarily consumer and that the granting of relief would be a substantial abuse of the provisions of Chapter 7. Accordingly, it is

ORDERED that the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b) is granted.

---

cases, the plan can be modified to adjust for the changes.

**7.** The following is a tally of monthly expenses which could be reduced:

| | |
|---|---|
| Mortgage and Maintenance payments on Avon condominium | $ 914 |
| Private school monthly tuition | 325 |
| Clothing reduced from $200 to $100 (he receives a clothing allowance from his employer) | 100 |
| Cleaning reduced from $100 to $50 | 50 |
| Elimination of charity deduction | 50 |
| Entertainment reduced from $200 to $100 | 100 |
| Elimination of elective insurance policies on children | 102 |
| Total | $1641 |